Leavel v. Porter.

# H. L. LEAVEL, Respondent, v. JOHN PORTER, Appellant.

## Kansas City Court of Appeals, January 30, 1893.

1. **Principal and Surety:** SURETY'S LIABILITY. The court approves the following findings of law in the referee's report in this case:

    (1)    The sureties on the bond of a contractor for his faithful performance of a building contract are liable for his failure to comply with his contract in his leaving unpaid material bills, and for the cost of finishing the work left incomplete, and for the liquidated damages for overtime required to complete the building.

    (2)    Any change in the contract without the surety's consent releases him, and his liability cannot be extended by implication or liberal intendment.

    (3)    Surety cannot take advantage of his principal's wrong and make that an excuse for his release, which the bond says shall be the reason of his liability.

    (4)    The contract called for the construction of a two-story and attic frame dwelling with cistern, etc., and made the specifications, etc., part of the contract; the bond for the faithful performance of the contract required the construction and completion of a two-story and attic building as provided for in the contract; the sureties are bound by everything contained in the specifications, etc., including cistern, etc.

    (5)    A building contract provided that seventy-five per cent. of the contract price should be paid on weekly estimates of the architect, and the remainder was retained until the building was completed and accepted, and satisfactory evidence was furnished that no claims existed against the building. *Held,* such evidence was not required on the weekly payments, and only on the final.

2. **Referee's Report:** FINDING OF FACTS. The finding of a referee on the issues of fact is regarded in the same light as a special verdict of a jury, and is not disturbed where there is substantial evidence to support it.

3. **Practice, Trial:** REFERENCE. The trial court was authorized by statute to refer this case.

4. **Judgment:** ON BOND: HARMLESS ERROR. While a judgment on a bond in form should be for the full penalty, with execution for the damages, yet this error does no harm and is not reversible.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*M. Campbell,* for appellant.

*W. Calvin Wells* and *S. F. Johnson,* for respondent.

GILL, J.—This case was tried before Ben. T. Hardin, Esq., as referee, and I know of no better statement of the controversy than to give the substance of his findings, of both law and fact, as reported by him to the circuit court.

"On the fifteenth day of June, 1889, plaintiff and Alonzo P. Johnson entered into a written contract, by the terms and conditions of which Johnson was to well and sufficiently, in a careful, skilful and workmanlike manner, build and complete one two-story and attic frame building, according to the plans and specifications made and furnished by W. W. Polk, architect, and under his supervision, on the southeast corner of Thirteenth street and Bales avenue, Kansas City, Missouri, to furnish all materials and labor therefor, and to finish the same on or before the fifteenth day of September, 1889, to the satisfaction and under the direction of said W. W. Polk, to be testified by a writing or certificate under his hand, etc.

"In consideration thereof, plaintiff Leavel was to pay $2,158, payable in the following manner: 'Seventy-five per cent. of the value of the labor, work and materials actually put into the building, to be paid to the party of the first part [Johnson] by the party of

the second part [Leavel] on Saturday of each week, as the work progresses, to be paid only on the certificate of Mr. Polk, architect, certifying to the value of the work and materials so put into said building.

" 'Provided, however, that the remaining twenty-five per cent. of the contract price be reserved by the party of the second part until the building is completed and accepted by the owner.

" 'Provided, further, that there shall be satisfactory evidence that there shall then be no claims then existing against said building for labor or materials done on, or used in, the construction of the same.

" 'Provided that in all cases the said party of the first part [Johnson] before he shall be entitled to demand or receive payment for the work, or any part thereof done under this contract, shall produce unto the said party of the second part [Leavel] a writing or certificate under the hand of said W. W. Polk, the architect above named, to the purport and effect that the materials furnished, and the work done by the said party of the first part, are in accordance with the plans, drawings and specifications above referred to, and of the respective provisions hereof.

" 'Provided, further, before final acceptance of the building when completed, a certificate shall be obtained by the contractor, from the clerk of the office where liens are secured, etc., that no liens are recorded against said building; neither shall there be any legal or lawful claims against the contractor, in any manner, from any source whatever, for work or materials furnished on said works.'

"The contract also contains the following: 'And it is hereby further agreed that the plans, specifications and drawings above referred to are hereby made and shall be considered and construed to be a part of this contract.

"By the terms of the contract, the architect may, at his discretion, reject any work or materials and has power to have any work altered at the expense of the contractor.'

"The plaintiff Leavel had power to make all alterations by adding to, or omitting, or deviating from the plans, drawings and specifications which he shall deem proper, and the architect shall advise, 'without in any manner impairing the validity and virtue hereof.' In such case the architect should appraise such alteration, and add to or deduct from the contract price, as the case might be.

"If Johnson should, during the progress of the work, become bankrupt, refuse or neglect to supply a deficiency of materials or workmen, Leavel·should have power to supply the same after one day's notice in writing should be given to Johnson; and in such case the costs of such work and materials should be retained by Leavel as liquidated damages, and Leavel should not be accountable to Johnson in any way 'for the manner in which he may have had the work completed.'

"On the reverse side of said contract, and on the same date thereof, is a bond entered into by A. P. Johnson, as principal, and John Porter and D. F. Sullivan as sureties, conditioned that if the said Alonzo P. Johnson 'shall duly perform said contract' the bond to be void, etc. The contract proper simply calls for the building of a two-story and attic frame building according to the plans and specifications.· But the plans, drawings and specifications, which are expressly made a part of the contract, call for privy, walk and cistern.

"It is also provided in the contract that, 'for each day the building remained unfinished after the time

that it was agreed that it should be completed, the liquidated damages shall be $10 per day.'

"The plans, drawings and specifications were to be construed and interpreted by Polk, the architect, and he was to have absolute control, and the iron-clad contract makes his will the law throughout. If any differences should arise between the parties to the contract, the decision of the architect above named shall be final and binding on all the parties hereto.

"Polk prepared the plans, specifications and drawings; the contract and bond were executed and accepted. There were some changes made during the progress of the work, in the wainscoting in the bath room, moving closet, changing a partition, one door, and some other minor changes, no notice of which was given to Sullivan and Porter. But no changes were ordered by Leavel. They were made by Polk and Johnson. No change was ever made in the contract, bond, plans, drawings or specifications. Leavel never consented to any delay in the completion of the building. A closet was moved by a foreman of Johnson on his own responsibility, Leavel acquiescing in the move.

"I also find that during the progress of the work Polk, in accordance with the terms of the contract, made written certificates of the value of the work and materials, upon which, on the following dates, were paid to Johnson by Leavel the following amounts * * * in the aggregate the total of $1,499.50, paid on the contract price, as called for by Johnson, as shown by the certificates issued by Polk. The amount of each payment was estimated by taking total estimate of work, deducting twenty-five per cent., and then deduct the total sum of all prior payments. This was done in accordance with the terms of the contract, and I find from the evidence that, at the time these payments were made, no claims were existing against

Johnson on account of material furnished for said work. Polk looked after the construction of the work and ascertained that the labor and material had entered into the building before issuing the certificates above mentioned.

"I further find from the evidence that Johnson never completed the building, but abandoned the same a short time before finishing it, and the three defendants were notified by Polk, in writing, that it was not finished according to the contract, and that Polk, the architect for Leavel, after more than one day's notice in writing to defendants, employed men and purchased materials to complete the work, on account of which Leavel was compelled to pay out the following sums, as shown by items mentioned in plaintiff's petition: * * * making a total of $1,106.66 which, added to the $1,499.50, paid out to Johnson on Polk's certificates, makes $2,606.16. From the whole amount thus paid out by Leavel, I deduct the contract price of $2,158, which leaves the amount that Leavel was compelled to pay over and above the contract price, by reason of Johnson's not having complied with his contract, $148.16.

"I further find from the evidence that the building was not completed on September 15, 1889, as the contract provided, and, although plaintiff claims for thirty days' overtime at $10 per day, the evidence of the architect shows that he charged for fifteen days' overtime and claimed for that much at $10 per day amounting to $150, which I find from the evidence plaintiff is entitled as liquidated damages, in accordance with the terms of his contract, and I accordingly allow it.

"I further find that the plans, drawings, and specifications enter into and form a part of the contract between Johnson and Leavel the same as though they were copied into said contract *verbatim.*

"I further find from the contract attached to the petition, and admitted in evidence, a clause containing the following language originally in print; *provided further*, that in each case (referring to the clause just preceding it, in regard to Johnson collecting seventy-five cent. of the price of the work on Polk's certificate) a certificate shall be obtained by the contractor, etc., that no liens exist, etc., 'neither shall there be any legal claims against the contractor in any manner,' etc. The parties, before signing the contract, scratched out the words 'that in each case,' and inserted in lieu thereof the following, 'before final acceptance of said building when completed,' which changed the whole meaning of the clause. As it was originally, such certificate from the recorder would have to be produced by Johnson before each payment made on Polk's certificates. And the last part meant, 'neither shall there be any legal claims against the contractor,' etc., when such payments were made on Polk's certificates of the work done. But as the first clause of the proviso was changed to require Johnson to produce the recorder's certificate as to liens, etc., before final acceptance of the building when completed, and the second clause referred to the first, it necessarily and most effectually changed the meaning of the second clause, so that it means 'neither shall there be any legal claims against the contractor when the building is completed and accepted.' There is no escape from this construction. Hence, I find that all money paid to Johnson by Leavel, viz., $1, 499.50, was paid in strict compliance with the contract, and that Leavel could not hold each partial payment until Johnson would produce the recorder's certificate as to liens, as claimed by defendant's counsel. My finding is the same in regard to Stoelzing's bill of $154.48, which takes its place alongside the other partial payments on Polk's certificates, and is gov-

erned by the same facts and by the same laws, and that all of said payments constituting the $1,499.50 were made to Johnson when, by the terms of the contract, they were made payable, and no other claims against the building were in existence. And the Stoelzing bill and judgments were themselves claims against the building, which Leavel was legally bound to pay. And in the written part of the contract, where are mentioned the terms of payment, the contract recites that twenty-five per cent. of the contract price shall be reserved 'until the building is completed and accepted by the owner.' And the proviso is that there shall be satisfactory evidence that there shall then be no claims existing, etc. Thus showing most conclusively that Johnson was to produce evidence of non-existence of claims, etc., only at the completion of the building, and not when partial payments were made, as contended for by defendants' counsel.

"The $448.16, which the plaintiff paid over the contract price, added to the $150 for overtime amounts to $598.16, for which I find for plaintiff, as the evidence shows that he performed the contract on his part so far as he was not prevented by the acts of Johnson. And I also find that any changes made in the work during its progress in no way increased the difficulty or expense, nor in any manner tended to delay the work embraced in the contract, plans, drawings and specifications agreed upon between Johnson and Leavel, none of which were ever changed, or in any manner altered. As conclusions of law from the above facts I find:

"I. There is no question as to the liability of Johnson for the amount found as a result of his failure to comply with his contract. The material bills were his debts, and Leavel was bound to pay them off, as a valid claim against his house. So with

the bills for finishing the work. And he is liable for the $150 liquidated damages. *Morse v. Rathburn,* 42 Mo. 594.

"II. It is insisted by counsel for sureties that the contract for the faithful performance of which their bond was given was changed so as to release said sureties. Any change in a contract made after a surety signs it or signs a bond for a faithful compliance with the contract will release the surety, and this, also, whether it be detrimental or beneficial to the surety, if the change be made without his consent. The liability of a surety is not to be extended by implication beyond the strict terms of the contract. To the extent, and in the manner and under the circumstances pointed out in his obligation he is bound and no further.

"He is the favorite of the law. There is to be no construction nor equity against sureties, and their liability is to be limited to the exact letter of their bond, and by no liberal intendment shall a surety's liability be carried in the smallest degree beyond the very terms of his undertaking, and no moral obligation is superadded to his legal obligation. If he is not liable in the strict letter of the law, he is not liable at all. The reason upon which this rule is founded is, that the surety has never made the contract upon which it is sought to charge him. His answer, if it is sought to charge him upon the altered contract, is that he never made any such bargain; and if upon the original contract, that such contract no longer exists, having been legally terminated by the altered or substituted contract made by the parties. In either contingency the answer furnishes a complete defense. This is the law everywhere.

"But I am at loss to see how this rule is to aid defendant sureties. There is not a scintilla of testimony in this case that the contract, plans, specifica-

tions, drawings or bond were ever, in the most remote degree, altered or changed after defendants executed the bond. It is true, some little variations were made in the original design of the house during the progress of the work, but not in any of the written instruments. And this, indeed, was provided for in the contract itself. But there is no evidence to show that Leavel had anything to do with changing the work, and, if Johnson failed to do the work according to the contract, this of itself was a breach of the bond, for which his sureties are liable. There is a vast difference between Johnson and Leavel changing the contract without the consent of the sureties, and Johnson's failure to do the work according to the contract. In the one case, the sureties would be discharged; in the other, firmly bound, for it is so nominated in the bond. The fact that Johnson did extra work, or work not in the manner mentioned in the contract, did not impose additional burdens on the sureties; nor did it change or alter their attitude in reference to their obligation to Leavel, if the contract was not changed. If Johnson did extra work, or varied his work from the original design, and did not thereby increase the difficulty or expense of the structure, nor delay the work embraced in the contract which was left unchanged, the sureties are bound.

"In cases cited by defendants, one of which is *Warden v. Ryan*, 37 Mo. App. 467, the contract had been altered. Not so in this case. In the case of *Ryan v. Morton*, 65 Tex. 258, the contractor who was principal in the bond and the owner made a new contract for two galleries, and the price of the work was not included in the original contract price. The work was done upon the same building, and was independent of the first contract. It was held that it

did not operate to release the sureties on the bond given for the faithful performance of the original contract.

"There is no evidence in this case of any changes authorized by plaintiff. There were minor departures, however, by Johnson, the contractor, with the advice of Polk, the architect; but they are specifically provided for in the contract. And to allow the sureties to escape liability because of such departures, without first complying with the contract wherein it provides for such departures, shall be first stated in writing by the owner with the certificate of the architect indorsed thereon, would be to allow them to take advantage of the wrong of the contractor, and make that an excuse for their release, which the bond says shall be the reason of their liability; and that, too, when plaintiff had nothing to do with the wrong, if any, done by the contractor.

"It is also urged by defendants, Porter and Sullivan, that the real contract called for 'two-story and attic frame dwelling-house, together with one cistern, one privy and one privy vault, and also the necessary walks around and about the house and yard,' and, further, that the bond was given, conditioned to be void, if Johnson shall, for $2,158, execute, construct and complete a two-story and attic building as provided by a written contract for that purpose, dated June 15, 1889, and that, therefore, said bond is not security for the fulfillment by Johnson of the contract he undertook. The things to be done, in addition to the dwelling, are mentioned in the plans and specifications, and the contract specifically says that the plans, specifications and drawings are made, and shall be considered and construed, to be a part of this contract. The sureties are just as much bound by everything contained in these plans, specifications and drawings as if

they had been copied *verbatim et literatim* into the contract. No citation of authorities is needed on that proposition.

"The sureties had the contract before them when they signed the bond which is on the reverse side of the contract. In law, they had all before them for which the contract called.

"It is further insisted by counsel for the sureties that there should have been satisfactory evidence that there were at each particular payment no claims then existing against said building for labor or materials done on or used in the construction of the same. The provision of the contract governing that is as follows: 'Provided, however, that the remaining twenty-five per cent. of the contract price be reserved by the party of the second part until the building is completed and accepted by the owner. Provided, further, that there shall be satisfactory evidence that there shall then be no claims then existing against said building for labor or materials done on or used in the construction of the same.' There is no room for doubt as to the meaning of this language. It simply refers to the time when the building is completed and accepted, that such 'satisfactory evidence' is to be produced that no claims exist against the property, and not to the weekly payments of seventy-five per cent of the price of the work then done on the house. Any other construction would be torture of the language used. That was a written provision in a printed form of contract, and the parties themselves evidently placed the same construction upon that clause, for following that written provision is a printed one just following the clause providing for weekly partial payments of seventy-five per cent. to be made by Leavel on Polk's certificate as follows: 'Provided, further, before final acceptance of said building when completed, a certificate shall be

obtained by the contractor, from the clerk of the office where liens are recorded, and signed and sealed by said clerk that he has carefully examined the records and finds no liens or claims recorded against said works, or on account of said contractor; neither shall there be any legal or lawful claims against the contractor, in any manner, from any source whatever, for work or materials on said works.'

"The above paragraph is an exact copy as it stands in the contract. It originally read that, 'in each case' of a weekly partial payment, a certificate shall be obtained by the contractor that no liens were of record against the property. As if to give force to the preceding written clause, and to make this clause conform in meaning to the former, the parties scratched out the words, 'in each case,' and wrote in lieu thereof the words, 'before final acceptance, of said building when completed.' I make the copy in print and write the words added so as to show the paragraph as the parties left it.

"Now counsel for defendants contend that the last clause in that paragraph, 'neither shall there be any legal claim,' etc, refers to the weekly payments. But, if he will resurrect his Kirkham, he will find that the second clause of said paragraph refers to and modifies the first and means, 'neither (at the final acceptance of said building when completed) shall there be any legal or lawful claims against the contractors,' etc. That construction brings this paragraph into harmony with the written one preceding it wherein it is provided that the remaining twenty-five per cent. of the contract price 'be reserved until the building is completed and accepted by the owner,' and that there be satisfactory evidence that then no claims exist, etc.

"If defendants' contention be right, the sureties would not be liable for the reason that the $1,499.50

paid to Johnson by Leavel would more than cover the amount sued for in this case, and, being the primary security for the due performance of the contract, should have been withheld, and the sureties should have the benefit of it. *Taylor v. Jeter*, 23 Mo. 244, and other cases cited by defendants' counsel in his brief.

"But I am unable to agree with him as to the facts in the case. If, in this case, the evidence had disclosed the fact that Leavel paid the money to Johnson, either when by the terms of the contract it was not payable, or that the money was paid to Johnson with the notice of existing claims against the building, then the con-tention of the defendants would find some support in the case of *Taylor v. Jeter*, 23 Mo. 244. Same case cited and followed in *Ryan v. Morton*, 65 Tex. 262. To the same effect is the case of *Watkins v. Pierce*, 10 Mo. App. 595. But the evidence abundantly establishes that all these payments were made to Johnson, when, by the terms of the contract, they were payable, and it is not shown that at the dates of the payments any lien claims were filed, or that any such claims existed. In such case the principle of law in *Casey v. Gum*, 29 Mo. App. 14, *loc. cit.* 25, governs.

"Other points have been raised, but I think the foregoing sufficiently disposes of the case, and I, there-fore, recommend that judgment be rendered in favor of plaintiff against all of the defendants, in the sum of $598.16, the amount found to be due. And all the papers, exhibits, evidence and other proceedings and reports are herewith returned to the court, as witness my hand this twelfth day of October, 1891.

"BEN T. HARDIN,

"Referee."

To the foregoing referee's report, the defendant sureties filed exceptions, which, on being heard by the court, were overruled; judgment was entered as sug-

gested in said report, and defendant Porter has appealed.

We have gone over the numerous objections to this judgment urged by defendants' counsel, and find in none of them any substantial reason for complaint. The referee in his report has not only given a full and clear finding of facts, but has as well substantially announced the law applicable to the case.

Much of the counsel's brief is taken up with complaints as to the referee's finding of facts. As well understood in cases of this kind, we regard the referee's finding on the issues of fact in the same light as a special verdict of a jury, and we will not, therefore, disturb the same where there is substantial evidence to support it. Having reviewed the entire evidence contained in this record, we discover no just cause to set aside the respective findings of fact on any of the issues.

The trial court, too, was authorized by the statute to refer the case. Revised Statutes, 1889, sec. 2138. And, while the judgment in form should have been for the full penalty of the bond, with execution ordered for the amount of plaintiff's damages, yet this error does no harm to defendant—is a mere barren technicality, and for which alone we do not feel warranted in reversing the judgment.

The judgment, therefore, of the circuit court will be affirmed. All concur.