GRANT v. ALFALFA LUMBER CO. et al.†

(No. 771.)

(Court of Civil Appeals of Texas. Amarillo. May 1, 1915. Rehearing Denied June 5, 1915.)

1. PRINCIPAL AND SURETY ⟜117 — DISCHARGE OF SURETY—ADVANCE PAYMENTS TO CONTRACTOR.

Where a building contract provided that the owner should make payments to the contractor as required to pay for the materials and labor, but the owner made payments in excess of the amount required for those purposes, some of which were not used for the building, the contractor's surety is entitled to credit on the owner's claim for loss caused by the contractor's default for the amount of such advanced payments.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. ⟜117.]

2. EVIDENCE ⟜271 — ADMISSIBILITY — SELF-SERVING DECLARATIONS—REBUTTAL OF RECENT FABRICATION.

In an action by a materialman against the owner of a building for the value of the materials furnished for the building, where the owner claimed that the allegation of promise by him to pay the debt was a recent fabrication, a letter written by the materialman before the controversy arose, in which he stated that the owner made such a promise, was admissible when limited by the court to the purpose of rebutting the owner's claim of recent fabrication.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. ⟜271.]

3. FRAUDS, STATUTE OF ⟜33—DEBT OF ANOTHER—NEW CONSIDERATION.

An oral promise by the owner of a building, in consideration of the materialman's agreement not to sue for the materials furnished the contractor at a certain term of court, to pay the account makes the debt his own, so that the promise is not within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. ⟜33.]

4. APPEAL AND ERROR ⟜843—HARMLESS ERROR—SUBMISSION OF ISSUES.

On appeal from a judgment in favor of the materialman against the owner of a building, where the jury specially found an express promise by the owner to pay the entire account, the question of error in submitting the right of the materialman to apply payments by the contractor to other accounts is abstract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. ⟜843.]

5. PRINCIPAL AND SURETY ⟜159 — DISCHARGE OF SURETY—BURDEN OF PROOF—ALTERATIONS IN PRINCIPAL CONTRACT.

The surety of a building contractor has the burden of proving, as against the owner of the building, that there have been material alterations in the contract which released its liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. ⟜159.]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Action by the Alfalfa Lumber Company against J. W. Grant, the Fidelity & Deposit Company of Maryland, and another. Judgment for the plaintiff and for the defendant Grant as against the surety company, and the defendant Grant appeals, and the surety company assigns cross-error. Judgment affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellant. Baker, Botts, Parker & Garwood and John C. Townes, Jr., all of Houston, and Graham & Graham, Fred C. Pearce, and Randolph & Randolph, all of Plainview, for appellees.

HENDRICKS, J. The appellant, J. W. Grant, with another, entered into a building contract with one W. T. McRae, a building contractor, for the erection of a certain building on lots 19 and 20, block 26, situated in the town of Plainview, Hale county, Tex., owned by said Grant, said building to be constructed according to plans and specifications prepared by certain architects. The Alfalfa Lumber Company, a corporation, one of the appellees herein, furnished the said McRae, the contractor, certain material, which entered into the construction of said building, of the alleged amount of $2,408.85, and the Fidelity & Deposit Company of Maryland, the other appellee herein, became the guarantor of McRae, the contractor, for the faithful compliance of the terms and conditions of said building contract, executing a bond in the sum of $5,000 to that end. Before the completion of the building, McRae, the contractor, abandoned the work, and the owner, Grant, assumed control of the building in its unfinished condition, completing the same at an alleged cost of .$4,793.85, Grant claiming that at the time of the abandonment of the work by the contractor he had paid to the latter the sum of $4,877.59 upon the amount of $7,000, for which latter amount the contractor agreed to build and finish said building. The Alfalfa Lumber Company sued McRae, the contractor, and Grant, the owner, also the Fidelity & Deposit Company of Maryland, the guarantor, to recover the said sum of $2,408.85, alleged to be due upon an open account, which was verified in the cause as representing the cost of the material furnished. The appellee Alfalfa Lumber Company also sought judgment against Grant, the owner of the premises, for the amount of the open account, claiming an independent promise made by Grant, to the representatives of the lumber company, to pay the amount of said

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

account, in consideration that the lumber company would forbear and refrain from suing said Grant at the next approaching term of the district court of Hale county, convening in February, 1914, alleging a compliance with said contract. Grant pleaded that as between him and the contractor, there was only $2,187.41 due the latter when the latter abandoned the work, and which balance was applied on the amount incurred by him in completing the building. The lumber company alleged that Grant had wrongfully paid to the contractor before the latter had ceased his work certain sums of money, in violation of the building contract, aggregating the sum of $1,303.53, and that, if at the time the owner, Grant, was served with written notice of the items of lumber and material furnished to the contractor, said owner did not have sufficient funds to pay plaintiff's account and complete the building, the lack of funds was due to improper payments made by the owner to the contractor. The guaranty company answered in the same spirit; in effect, that under the contract the owner agreed to make payments to the contractor as required, to pay for brick, sand, plaster, metal lath, roofing material, and the weekly pay roll, used in the erection and completion of the building, and that the owner departed from the terms of said contract without the consent and knowledge of the bonding company, and paid certain sums of money, not specified to be paid by him by said contract, in violation of its terms. The jury, upon the submission of special issues, found against Grant and in favor of the lumber company, upon the independent promise to pay the debt, for the whole amount of the open account, but found in favor of Grant on his cross-action against the bonding company the sum of $754.85, reducing the cross-action of Grant, however, by a finding of $1,448.79, as an aggregate amount which Grant paid McRae, in violation of the terms of the contract as to the rights of the surety.

[1] The following is the important paragraph of the building contract germane to this controversy:

"Art. 4. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owners to the contractor for said work and material shall be seven thousand ($7,000.00) dollars, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owners to the contractor in current funds, as follows: The owners agree to make payments to the contractor as required to pay for the brick, cement, plaster, metal lath and roofing material, also payment to cover the weekly pay roll for labor used in the erection and completion of the work included in this contract; the sum of all payments so made, not to exceed the amount of this contract ($7,000.-00)," etc.

A special issue, submitted by the trial court, whether the owner paid the contractor, prior to the time the latter abandoned the work, "any sums of money, except for brick, cement, plaster, metal lath, roofing material, and weekly pay roll for labor used in the erection of the building," was answered affirmatively by the jury, itemizing the amount improperly paid by Grant, and aggregating the sum of $1,448.79, as stated. The appellant says:

"One of the most important questions presented in this case * * * is the question as to whether or not * * * the owner of the building * * * advanced funds to the contractor in violation of the terms of the builder's contract, and thereby released the surety to the extent of such payments and advancements"

—contending that:

"The language does not restrict the payments to be made by the owner to the contractor at such times as the latter is required to pay for brick, cement," etc.

In the case of Ryan v. Morton, 65 Tex. 260, the defendant surety pleaded that the owner of the building paid to the contractor, without notice to him, the full contract price, in violation of the terms of the contract, before the completion of the building, the contract providing for an installment payable in advance, "and the balance in four equal installments as the work progressed." Justice Stayton said:

"There was a privity between Morton and the sureties which required him to preserve all his rights against Giraud [the contractor] unimpaired, if he intended to look to the sureties. By a fair construction of the contract, the builder was to have payment [the balance] in four equal installments, which, as to time of payment, were to be regulated by the progress of the work. * * * This was a part of the contract for the protection of the owner of the property, but it gave a guaranty to the sureties that the work would not be paid for until it was done. * * * This he did not do, but on the contrary, he paid to their principal, in violation of the contract, the full price to which he would have been entitled had he performed the entire work."

And Justice Stayton, quoting from another authority, further said:

"A surety has the right to require that the obligee shall do his duty. * * * The owner should have advanced only what the contract bound him to advance."

See, also, Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 129 Am. St. Rep. 803.

In principle, we can see no difference between the case cited and the instant case. In this case the owner agreed to make the payments to the contractor for the weekly pay roll, and for specific material mentioned, "as required" to pay for the same, which, as to a considerable amount, the jury found that he did not do; in reality some of the payments, at least one large one of over $500 never went into the building. In the case cited, the installments were to be paid as the work progressed, which was not done, but the whole amount was paid before the completion of the building; here payments were made, not for material as required to be used in the erection of the building, as should have been done. See, also, the case of McKnight v. Lange Mfg. Co., 155 S. W. 978, involving the same facts as the Ryan-Morton Case, supra, wherein numerous authorities are cited and commented upon.

While the jury in this case rejected the claim of the owner of the building against the bonding company only to the amount of the improper payments, and while the question is not before us as to the total release of the bonding company, however, the authorities cited, by analogy, support, at least, the judgment of the court, and we think that the appellant has no real cause to complain.

[2] During the progress of the trial the following letter was introduced in evidence by the plaintiff:

"J. H. Foresman, Mgr., Kansas City, Mo.—Dear Sir:

W. T. McRae, Grant job............ $ 862 98
W. T. McRae, Grant & Korber job.. $3,111 45
                                    _____
    Total .................... $3,974 43

"The contractor on the above job has gone to the bad, and we have accounts to the above amounts. Mr. Hancock has filed liens. I have had a couple of talks with the owners and the contractor. The bonding company had one representative out here, and they are expecting another in the next few days. The owners claim that they are going ahead and finish the building and pay all accounts in full. If we can handle this with the owners we will come out better than we will with the bonding company. Mr. Hancock is to keep us advised how he comes out.

    "Yours truly,     [Signed] J. W. Deal."

Before this letter was introduced by plaintiff, the defendant Grant had offered in evidence the plaintiff's original petition and various amendments, for the purpose of showing that the last amendment of August 29, 1914, was the first pleading in which the independent promise to pay the debt, based upon the forbearance, was alleged; the parties then in open court agreed:

"That the suit was filed March 25, 1914, and that the petition was several times amended, * * * and that the alleged agreement by the said defendant Grant to pay the plaintiff [the amount of the open account] was not pleaded by the plaintiff until August 28, 1914."

The defendant Grant objected to the letter on the ground that it was self-serving and hearsay, and with which he was not connected, and had no notice thereof. The trial court qualified the bill by saying that:

"The letter was offered in evidence by the plaintiff * * * only for the purpose of rebutting the defendant Grant's theory that this alleged agreement was an aforethought; and, in passing upon the admissibility of the letter, the trial judge excluded all except the first five sentences of the letter, and instructed the jury at once, and at length, that they should not regard the letter as evidence for any purpose except of rebutting the defendant Grant's position that this alleged agreement was an afterthought."

The bill further shows, by the court's qualification, that appellant's attorney, in arguing the case to the jury, assumed the position that the independent agreement "was an afterthought, and a trumped-up scheme, and an entirely manufactured cause of action, and, among other expressions, said that the witness Deal (the assistant manager for the lumber company) was trying to frame up a deal on the defendant Grant"; that the plaintiff's attorneys "argued that the letter was a circumstance to show that the witness Deal had this agreement in mind long prior to August 28, 1914, when the pleading referred to above was filed." The appellee lumber company vigorously attacks the assignment in the brief of appellant raising this question as ambiguous, and as compared to the bill of exceptions, the letter referred to in the assignment is not literally the same letter embodied in the bill, which is correctly copied herein. The assignment is ambiguous and uncertain, but we prefer to decide the question on its merits.

It is noted that the attack of the defendant Grant upon the testimony of Deal was a vigorous one, upon the ground of fabrication. In the case of Lewy v. Fischl, 65 Tex. 318, the latter claimed that he had been a dormant partner with the firm of Marek & Marek, that he had sold his interest to the firm for $3,000, evidenced by a note, and that the goods transferred to him were in consideration of the cancellation of this note, and other considerations. Lewy, the creditor, introduced evidence tending to show that Fischl had never been a partner and had never put any money in the business. Quoting from the case:

"The appellee [Fischl] was then permitted to show, over objection, that, long before the suit, and at a time when he claimed to have been a dormant partner of the Mareks, he stated, in the absence of plaintiffs, that he was such a partner, * * * and that Marek & Marek were his debtors in a large amount."

Justice Robertson said that the plaintiff's evidence raised the issue of the fictitiousness of the debt, and that "the theory of its origin and consideration was an invention parented by the necessity of Fischl's case." The court further said:

"On this issue, the testimony complained of was material. It showed that appellee had the same conception of the facts before the imputed motive could exist that he had at the trial, and certainly was corroborant of his testimony," holding that Fischl's "declarations were therefore properly admitted."

This court, in the case of National State Bank v. Ricketts, 152 S. W. 649, on a state of facts to some extent similar to the record here, announced the same principle.

When the alleged agreement was made, Grant had been served with notice of the itemized account, and there seems to have been no controversy whatever as to the account. The subject in dispute, as to the particular issue at the trial, is the making of the particular agreement. It cannot be said that at the time the letter was written there was a controversy in the sense the authorities use the term as to the particular matter. Jones on Evidence, says:

"* * * If the subject in dispute at the time of the trial was not in controversy when the declarations were made, they are inadmissible [admissible] if otherwise competent. In other words, the controversy, as used in this connection, must have related to the particular subject at issue in the trial." Section 311, vol. 2, Blue Book, p. 702.

We are inclined to think that the letter, though not specifically reciting the whole agreement pleaded, was admissible, with the limitations attached by the trial court.

[3] The appellant also contends that:

"The court erred in rendering judgment for the full amount of the account sued upon, because the uncontroverted evidence shows that material to the value of $300, included in said account, did not go into the building," etc.

It is undisputed that Grant was served with an itemized copy of the account a short time before the agreement was made, as alleged; the account served upon Grant was the account sued upon. The jury found that:

"If the plaintiff would forbear bringing suit upon its account, and not take steps to foreclose its alleged lien until the building was completed, that he would then pay the account sued upon by the plaintiff."

The statute of frauds is not pleaded; if it had been, still the promise made the debt Grant's debt; neither is there any denial of the account in the pleadings. Hulme v. Levis-Zuloski Mercantile Co., 149 S. W. 783; Pelican Lumber Co. v. Johnson Merc. Co., 89 S. W. 439. It seems that Grant was interested in the construction of another building by the same contractor at the same time in the same town, and the contractor, at one time upon the trial, said that a part of the lumber in this account went into the other building, but, waiving the question of the independent promise to pay the particular account for a consideration, a close scrutiny of the whole testimony does not disclose that the same is of an undisputed nature. As a jury question, without intending to reflect, there are too many affirmations and denials, by McRae, the contractor. The materialman's lien was foreclosed to the extent only of $1,654, not $2,408. We see no error and overrule the assignment.

[4] As stated, the record shows that Grant was building, or interested in the construction of, another building. Appellant complains that the court—

"erred in submitting to the jury what is designated in his charge as 'first question,' wherein he instructs the jury that the plaintiff's agent, Hancock, had a right, under the law, to apply payments made by McRae to any account that he was instructed by the said McRae to apply same, and in the absence of any instruction from the said McRae, or any agreement between plaintiff's agent and said McRae, that said agent had a right to apply any payments made by McRae to any debt owing at that time to the plaintiff by said McRae."

If Grant, for a valuable consideration, promised to pay the account served upon him, and the one sued upon, this question becomes entirely abstract, and is overruled.

[5] The bonding company, by cross-assignment of error, asks for a rendition of the judgment against it, for the partial amount recovered by Grant on his cross-action, claiming that the jury found certain alterations in the original specifications. The findings of the jury, quoted in the bonding company's brief, while exhibiting an alteration, are very indefinite as exhibiting a material alteration in the specifications; and, in searching the record for the purpose of testing the materiality of the alteration, we find, upon examination of the specifications, that, as disclosed in this record, there have been no alterations. The burden is upon the bonding company in this matter, and we are unable to see, as presented, that said burden has been in any wise discharged.

The judgment of the lower court is, in all things, affirmed.