THOS. RYAN V. G. W. MORTON.

(Case No. 2067)

1. CONTRACTS—SURETIES—The liability of a surety cannot be extended beyond the
   terms of the contract out of which his obligation arises, and if the contract
   be altered without his consent, whether he sustain injury by such alteration
   or it be to his advantage, the contract ceases to be his and with that ceases
   his obligation.
2. SAME—SUBSEQUENT AGREEMENT OF PRINCIPAL—Such, however, will not be the
   effect of a contract by which the surety's principal subsequently agrees to do
   for the same person other and separate work, if by such contract no new terms
   are added to the former and it is in no respect modified, and the last under-
   taking in no way increases the difficulty or expense or tends to the delay of
   the work embraced in the first contract.
SAME—CASE STATED—By written agreement between G. and M., dated May 17,
   1881, G. was to erect a certain building for M. according to plan and specifi-
   cations furnished, G. to provide all necessary labor and materials and to
   complete the building within four months from that date, and was to receive
   therefor $8,300, three thousand dollars of which amount were to be paid at
   the commencement of the contract and the balance in four equal installments
   as the work progressed.    R. and another became sureties of G. for the per-
   formance, on his part, of the agreement.    G., after performing part of the
   work, abandoned the contract and never completed the building, though M.
   had, in the meantime, advanced to him the full contract price, in six install-
   ments, other than the first.    M. afterwards took possession of the building
   and completed it, at a further expense to himself of more than seven hundred

dollars.  M. brought an action of debt on the bond, assigning as a breach G.'s
non-performance of his agreement and M.'s loss thereby.  R. pleaded release
as surety by the act of M. in paying to G., in violation of the terms of the
agreement, the entire contract price before the work was finished.  *Held:*

(1) That there was a privity between M. and the sureties which required him
to preserve all his rights unimpaired against G.; if he intended to look to the
sureties, and that, therefore, M. ought to have retained in his own hands a fund,
equal, at least to what would, at the contract price, have covered the uncom-
pleted portion of the work.

(2) That M. having advanced to G. the full price to which he would have
been entitled had he performed the entire work, instead of retaining until the
building was completed what he was entitled to retain by the terms of the
agreement between G. and himself, with reference to which the contract of the
sureties was made, released the sureties of G., and cannot now resort to them
for indemnity.

3. CASES FOLLOWED—Warre *v.* Calvert, 7 Adol. & Ellis 101, and Taylor v. Jeter, 23
Mo. 251, approved and followed.

APPEAL from Webb.  Tried below before the Hon. J. C. Russell.

G. W. Morton brought this suit in the district court of Webb
county against L. J. Giraud, Thomas Ryan and Gaspar Mas, on a
bond executed to him by Giraud as principal, and Ryan and Mas as
sureties, and conditioned for the performance, on Giraud's part, of a
contract entered into between him and Morton for the erection of a
certain building on the property of the latter, according to plan and
specifications attached to the contract.    By the terms of the contract
Giraud was to furnish all necessary labor and materials, and to com-
plete the building within four months from May 17, 1881, and Morton
was to pay him therefor $8,300, $3,000 of which amount was to be
paid at once, and the balance in four equal installments as the work
progressed.   Giraud performed a part of the work, but abandoned
the contract before the building was completed ; and Morton, who had
in the meantime paid him the full amount of the contract price, was
obliged to finish the building at an additional expense to himself of
$700 or $800.

It appears that after the execution of the contract and bond, there
was a verbal contract between Morton and Giraud, by which the
latter agreed to add to the building two galleries not included in the
written contract.   He was, however, paid extra for these, and the
evidence does not show that they in any respect altered the plan or
specifications, or increased or delayed the work stipulated for in the
first contract.

Plaintiff alleged performance of the stipulations in the written con-
tract on his part to be performed, and assigned as a breach the
abandonment of the work by Giraud and his failure to complete the

same, necessitating the employment of others at great expense to plaintiff, the inferiority of the work done and the materials used by Giraud to those specified in the contract, and plaintiff's loss thereby, laying his damages at $1,700.

The defendant Ryan answered by general and special demurrers, general denial, and pleaded specially : first, that the plaintiff and Giraud, by mutual agreement between themselves and without the consent of him, the said Ryan, materially changed the terms of the contract for the building after the execution of the bond ; secondly, that the plaintiff, well knowing the character of the work done and the kind and quality of materials used by Giraud, accepted the same without objection, and, well knowing to what extent the work on said building had progressed, paid to the said Giraud without notice to him, the said Ryan, and in violation of the terms of the contract, the full contract price therefor, before its completion.

The demurrers were overruled, the cause was tried without a jury, and the court rendered judgment in favor of the plaintiff for $330.70 against all of the defendants.

The defendant, Ryan, filed a motion for a new trial, which was overruled ; and the cause is here on his appeal.

*McLane & Atlee*, for appellant, on the proposition that a surety for the completion of work to be performed by the principal, where, by the terms of the contract, the principal is to be paid in installments, is discharged if the principal is paid faster than the contract provides, cited: Smith *v.* Montgomery, 3 Tex. 203 et seq.; 2 Suth. on Dam. 545 ; Wood's Mayne on Dam. sec. 403.

That an alteration of the contract without the surety's consent, discharges the surety, they cited : Smith *v.* Montgomery, 3 Tex, 203 ; Claiborne *v.* Birge, 42 Tex. 98 ; Zimmerman *v.* Judah, 13 Ind. 286 ; Mayhew *v.* Boyd, 59 Am. Dec. 101 ; Smith *v.* Turns, 16 ; Id. 617 5 ; Wait's Acts. and Def. 226, 231 ; Brandt on Sur. and Guar. secs. 79, 330, 338, 345, 347.

No briefs on file for appellee.

STAYTON, ASSOCIATE JUSTICE.—It is well settled that the liability of a surety cannot be extended beyond the terms of the contract out of which his obligation arises. If the contract be altered without his consent, whether he sustain injury or the contract be to his advantage, it ceases to be his contract, and with that ceases his obligation. Such, however, will not be the effect of a contract by which his principal

subsequently agrees to do for the same person other and separate work, if by such contract no new terms are added to the former, and it in no way is modified, unless the work last contracted to be done in some way increases the difficulty or expense, or tends to the delay of the work embraced in the first contract.

In this case the principal contracted to build a house in accordance with a plan and specifications, and afterwards contracted to build two galleries to it, which were not embraced in the first contract, but it does not appear that this modified, in any respect, the plan or specifications made a part of that contract, or that it increased the difficulty or expense, or tended to delay the execution of the work for which the sureties were bound. So far as appears from the record, the work contracted for under the second contract may have been as independent and separate from the work embraced in the first, as would have been the work of building another house. The price to be paid for the work to be done under the second contract was not embraced in the sum agreed to be paid for the work to be done under the first.

It may have required more laborers to complete the work embraced in both contracts, in the time prescribed in the first, than to do the work contemplated by that; but there is nothing in the contract from which it can be inferred that the builder contracted not to undertake any other work than that first contemplated, until that was finished. The plan and specifications gave the size of the several openings in each story, but, so far as we can see from the record, their number and positions were not fixed, nor was the particular manner of their construction. We are therefore of the opinion that no such alteration in the contract was shown, in this respect, as would relieve the sureties from liability under their contract.

The contract of the sureties was made with reference to the contract which their principal had made with the person for whom he had contracted to build the house, and must enter into its construction. That contract provided: "That at the commencement of this contract said George W. Morton shall pay to said L. J. Giraud the sum of $3,000, and the balance due to said Giraud upon this contract, in four equal installments, as the work progresses."

The price agreed was $8,300. The entire contract price was paid in six installments other than the first; after which, the owner of the house, in consequence of the failure of Giraud to finish it, took possession of it, and had the work completed, at a cost of over $700.

There was a privity between Morton and the sureties which required him to preserve all his rights against Giraud unimpaired, if he intended to look to the sureties. By a fair construction of the

contract, the builder was to have payment in four equal installments, which, as to time of payment, were to be regulated by the progress of the work. If one-fourth of the work was completed, then one-fourth of the price not paid at first, was to be paid, and so on until the work was completed, the time for the several payments to be made depending upon the progress made in the work.

This was a part of the contract for the protection of the owner of the property; but it gave a guaranty to the sureties that the work would not be paid for until it was done. This tended to their protection, and, if a part of the work was not done by their principal, the owner ought to have retained a fund in his own hands, at least equal to the contract price for the work not done, which would have lessened the liability of the sureties to him on failure of their principal to comply with his contract, This he did not do, but, on the contrary, he paid to their principal, in violation of the contract, the full price to which he would have been entitled had he performed the entire work.

We may, in this case, adopt the language used in Warre v. Calvert, Adol. & Ellis, 101: "The advances were not made under the contract. It might perhaps be proper for Morton to make advances for the purpose of enabling Giraud to fulfill his undertaking; but such advances are not made in terms of the contract. A surety has the right to require that the obligee shall do his duty; and I think that the advances made in this manner by the obligee do not render the sureties liable. It is contended that the surety is to see to the performance of his principal's contract, and that is true; but how can he watch the advances made by the other party? Here he may, in fact, have known of the advances, but that does not affect the general rule. The owner should have advanced, only what the contract bound him to advance."

Taylor v. Jeter, 23 Mo. 251, was a case involving the same principles involved in this case, and very similar facts, in so far as they affect the question before us, and in disposing of the case the court said: "The contract duty of this builder was to furnish the materials and do the labor, and he failed in both respects when he allowed the building to be encumbered with three liens. The owner having notice of them, and paying what by the substantial terms of the contract he was entitled to retain until they were removed, voluntarily abandoned an ample fund, which, according to the conditions of the contract, was to accumulate in his own hands as the primary security for its due performance, and in which the surety had an equal interest with himself, he must, therefore, bear the loss occasioned by his own

negligence and folly." The same rule was announced in Lan. *v.* East India Co., 4 Vesey 824.

The acts of Morton released the sureties from any claim which he presents against them, and the judgment of the court below will be reversed, but, as only one of the sureties is before this court, the cause will be remanded.

It is so ordered.

REVERSED AND REMANDED.

[Opinion delivered January 15, 1886.]