HINES CLARK AND CURTIS HERRING V. A. H. CUMMINGS.

No. 7317.

1. **Sureties Discharged by Alteration of Contract.**—Between the creditor and the sureties on a contract is a privity out of which springs an obligation on part of the former that he will not extend or affect the liability of the surety beyond the terms of the contract. Where the principal debtor and the creditor without consent of the surety enter into a valid agreement by which in a material sense the original contract is altered, with intent to change its effect, and with knowledge at the time on the part of the creditor of the existence of the relation of principal and surety, the latter is discharged.

2. **Same — Case in Judgment.**—Cummings contracted with Murray, principal, and Clark & Herring, sureties, November, 1887, by which Murray was to sell and deliver to Cummings 300 head of steers one year old in June, 1887, at $5.50 per head, of which $800 was advanced and balance to be paid on delivery of the cattle, which delivery to be on or before January 1, 1888. In January, 1888, Cummings and Murray without consent of the sureties further contracted as follows: Cummings advanced Murray $400 more and fixed the price of the cattle at $4.25 per head, delivery to be in the spring of 1888. Murray failed in part, and in suit against him and his sureties on the contract, *held*, that the new contract made in January was a material alteration, and more onerous than the original, and that the sureties were released.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN. No statement is necessary.

*Barnard & Green*, for appellants.—The extension of time for performance upon sufficient consideration will release sureties; so any other material variation of the contract validly made will release sureties thereon from further liability thereunder. Ryan v. Morton, 65 Texas, 258; Embree & Keys v. Strickland, 1 Ct. App. C. C., sec. 1299; 2 Suth. on Dam., p. 545, and authorities cited.

*J. H. McLeary*, for appellee.—1. The appellants nowhere plead a discharge from their obligation by reason of the extension of the time alleged to have been made by plaintiff to Murray.

2. The plaintiff did not extend the time for delivery, and nowhere agreed with Murray to allow him to deliver cattle in June and July, but he always urged the delivery to be made as soon as possible, and received all cattle which were offered and came up to the requirements of the contract, even in July and August.

3. There was no material variation of the contract made between Cummings and Murray, and the sureties can not claim a release from the contract made by the advancement of $400 made to Murray in January, 1888, to enable him to fill the contract; especially when they are not sought to be held liable for that $400.

TARLTON, JUDGE, *Section B.*—February 16, 1889, the appellee, A. H. Cummings, brought this suit in the District Court of Bexar County,

against Joe Murray as principal, and Hines Clark and Curtis Herring as sureties, in a contract for the delivery of cattle. Plaintiff sought to recover damages for the breach of the contract.

According to the terms of this contract, dated November 26, 1887, Joe Murray as principal, with appellants as sureties, bound himself.to sell and deliver to Cummings, the appellee, 300 head of steer cattle, one year old in June, 1887, at the price of $5.50 per head, to be delivered on or before January 1, 1888, at the ranch of appellee, near Moore's Station, known as the Lampkin ranch. The consideration passing to Murray was the sum of $800 cash paid at the date of the contract, and the further sum of $850 to be paid on delivery of the cattle, to be accepted by Cummings at or near San Antonio.

After setting out this contract, the plaintiff in his petition further alleged, that in January, 1888, the defendant Murray falsely and fraudulently represented to him that he had purchased the cattle and had them ready for delivery, but that he needed an additional sum of $400 with which to pay for them, which sum plaintiff, believing the representations, thereupon advanced to Murray; that in the months of June and July, 1888, the defendant delivered to plaintiff upon the contract 112 head of cattle, of the value of $616; that in the months of June, July, and August, Holly Murray, the son of Joe Murray, drove to plaintiff's ranch 63 head of cattle of an inferior grade, which he offered to plaintiff on the contract; that plaintiff refused to accept these inferior cattle on the contract, but that he did accept them on the $400 advanced in January, 1888, at the price of $4.25 per head, aggregating the sum of $267, and leaving a balance of $132.25 due on the advance of $400.

Plaintiff prayed judgment against defendants Murray,· Clark, and Herring for the sum of $184 overpaid at the date of the contract to defendant Murray, for which no cattle had been delivered, and for $132.25 overpaid in January, 1888, for which no cattle had been delivered, aggregating the sum of $316.25. He also claimed damages in the sum of $846, on account of the advanced price of the 188 head not delivered.

The defendant Murray made default. The defendants Clark and Herring pleaded the general denial—a special denial of damage on account of advance in price; and they further pleaded their suretyship and abrogation of the contract by the principals Cummings and Murray without their knowledge or consent.

The judgment of the court from which the sureties prosecute this appeal is manifest from the following conclusions of fact and law, which it is deemed proper to insert:

Findings of fact:   "1. The execution of the contract upon which this suit is brought is not disputed.

"2.   The defendants Curtis Herring and Hines Clark are only liable under the contract as sureties.

"3. That $800 was advanced by plaintiff at the date of the execution of the contract and its receipt was acknowledged therein, and defendants Herring and Clark had full notice of this advance.

"4. That after the execution of the contract, and before any cattle were delivered or offered for delivery upon this contract, and after the date of their delivery under the contract, plaintiff advanced to Jos. R. Murray the further sum of $400, without the knowledge or consent of either the defendants Herring or Clark.

"5. That 112 head of cattle of the grade and class described were delivered by the defendant Murray to plaintiff upon the contract in June and July following.

"6. That Holly Murray, son of Jos. R. Murray, drove for said defendant Murray, at three different times, 63 head of cattle in all, of inferior grade and quality, to be delivered upon the contract at plaintiff's ranch, in Frio County, Texas, and offered them to plaintiff upon the contract, and that plaintiff refused to accept them upon the contract, but that, being urged by Holly Murray, plaintiff agreed to purchase said 63 head of cattle from Holly Murray, the owner of them, for the sum of $4.25 per head, amounting to $267.75, and credit their value at that price upon the $400 advanced theretofore by plaintiff, as a second advance upon the contract.

"7. That only 112 head of cattle were delivered by defendant Murray upon said contract, and 188 head of cattle remained undelivered upon said contract; that the contract price of the 112 head delivered amounted to $616; that the difference in the market and contract price for the 188 head not delivered, was, on January 1, 1888, the sum of $188."

Conclusions of law: "1. That defendants Herring and Clark are not liable for the advance of $400 made in January, 1888, but defendant Murray is liable therefor.

"2. That all the defendants are liable for the difference between $616, value of 112 head of cattle delivered, and the $800 advanced, to-wit, $184, and 8 per cent interest thereon from January, 1888, to date; and all defendants are liable for the difference between the contract price and market value on the 1st day of January, 1888, of the 188 head of cattle which were not delivered upon said contract as agreed, at $1 per head, aggregating $188.

"3. That plaintiff have judgment against all the defendants for $403.87, and against the defendant Joseph R. Murray for $153.37 more, and 8 per cent interest from date.

"4. That defendants Curtis Herring and Hines Clark have judgment over against defendant Joseph R. Murray for the $403.87, and interest."

The record contains several assignments of error; but in our opinion a consideration of the fifth assignment alone will suffice for a disposition of this appeal.

In that assignment, appellants insist on the proposition that they were discharged as sureties by an agreement made in January, 1888, between Cummings and Murray, whereby the contract sued on was changed. Both Cummings, the plaintiff, and Murray, the defendant, testified on the subject suggested.

Cummings testified as follows: "In November, 1887, I made the contract sued upon. I paid Murray $800 in advance on the day the contract was signed and delivered. After this, I did not see Murray again until some time in January, 1888, and then he told me that he had nearly all the cattle to be delivered to me under the contract purchased, but needed more money with which to pay for them, and I gave him $400 more upon the contract, without the knowledge of either Herring or Clark, and told him he must be sure to have the cattle of the proper age and grade. He told me he would send them up in the spring."

The statement of the defendant Murray was as follows: "In January, 1888, I made with Cummings a modification or change in the contract as follows: I was to deliver the yearlings referred to [meaning, as shown by other portions of his testimony, yearlings one year old in 1888] at $4.25, and the three-year-olds at $8."

Cummings, in rebuttal to this statement of Murray, testified, that "he made no agreement with J. R. Murray to pay him $8 per head for three-year-olds, as testified by him; that the agreement between them was for $4.25 for the short yearlings, but nothing was said about the three-year-olds."

A fair construction of the foregoing evidence leads to the conclusion, that in January, 1888, after the maturity of the contract, Murray, finding himself unable to deliver the cattle in accordance with its terms, obtained an additional sum as an advance on the contract, and that it was agreed between the principals, without the knowledge or consent of the sureties, that cattle one year old in the year 1888 should be delivered at the price of $4.25 per head, instead of cattle specified in the contract, one year old in 1887, at the price of $5.50 per head. Thus an additional sum of money was advanced by Cummings and the property previously bargained for abandoned, in consideration, presumably, of which, cattle of a different quality and price were to be delivered by Murray. The liability of the debtor was increased, and on his failure to comply with the terms of the latter agreement, the quantum of damages recoverable by Cummings would be necessarily different from the amount recoverable in the event of a breach of the original contract. By the terms of the original contract, the extent of Murray's liability under the proper rule for the measure of damages would have been the difference between the contract price and the market price at the date of the breach of an obligation fixing the contract price at $5.50 per head; while under the subsequent agreement it would be

necessary to fix the liability by reference to a contract price of $4.25 per head, and to a market price correspondingly different.

The new agreement was not purely an addition to the original contract; it was a change in essential features in the contract itself.

Between the creditor and the sureties on a contract is a privity, out of which springs an obligation on the part of the former that he will not extend or affect the liability of the surety "beyond the terms of the contract." Ryan v. Morton, 65 Texas, 261. Where the principal debtor and the creditor, "without the consent of the surety," enter into a valid agreement by which, "in a material sense," the original contract is altered "with intent to change its effect," and "with knowledge at the time on the part of the creditor of the existence of the relation of principal and surety," the latter is discharged. Baylies on Sure. and Guar., 261; Lane v. Scott, 57 Texas, 367; Wylie v. Hightower, 74 Texas, 306; Gardner v. Watson, 76 Texas, 32.

By virtue of the agreement between Cummings and Murray in January, 1888, a new contract took the place of the original. The sureties should not be held responsible on the original, because it ceased to exist; they could not be liable on the substituted contract, because they were not parties to it. Baylies on Sure. and Guar., 260.

The court in its conclusions of fact does not refer to this question of alteration in the contract. If, therefore, the evidence was conflicting on the point, we should have to impute to the court in support of its judgment a finding adverse to appellants. Gardner v. Watson, 76 Texas, 25. The evidence, however, as we understand it, does not present a conflict.

Appellants request that judgment be here rendered for them; but the testimony on the point discussed, while uncontradicted, is not in itself so clear and satisfactory as to commend this course to us. We think that the purposes of justice would be best subserved by reversing the judgment and remanding the cause; and we so recommend.

*Reversed and remanded.*

Adopted May 17, 1892.