KELSAY LUMBER CO. et al. v. ROTSKY et al. (No. 803.)†

(Court of Civil Appeals of Texas. Amarillo. June 7, 1915. On Motion for Rehearing, July 3, 1915.)

1. PRINCIPAL AND SURETY ☞101—RELEASE—ADVANCE PAYMENTS TO CONTRACTOR.

It is a material alteration of a building contract, releasing the contractor's surety, that, contrary thereto, the owner pays the contractor, as the work progresses, more than 75 per cent of the price; the surety not consenting.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 169–180; Dec. Dig. ☞101.]

2. PRINCIPAL AND SURETY ☞117—RELEASE—BUILDING CONTRACTS.

As between the owner and the building contractor, the contractor's surety is released, the owner not having, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 5638, with reference to which the parties are presumed to have contracted, retained 10 per cent. of the contract price of the building for payment of artisans and mechanics, for which failure they are given right to file liens.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. ☞117.]

3. INDEMNITY ☞9 — EXTENT — ATTORNEY'S FEE.

A building contractor's surety, having been released from all liability, loses all right to money deposited to indemnify it against loss as surety; such an indemnity contract, in the absence of express agreement, not covering the surety's attorney fees in defending an action.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 16, 17; Dec. Dig. ☞9.]

4. JUDGMENT ☞253—CONFORMITY TO UNDISPUTED EVIDENCE.

The only evidence of the amount of indebtedness of a building contractor to a materialman, which the building owner agreed to pay with money to be retained from the contractor, being the testimony of the materialman, the

court could not arbitrarily render judgment for half only of it.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 443, 444; Dec. Dig. ☞253.]

5. INDEMNITY ☞12 — RELEASE — ALTERATION OF CONTRACT.

Where J. deposited money to indemnify F. as surety on the bond of H. as contractor for one building, there was such an alteration of contract as to release ·J., when without J.'s knowledge or consent the building contract and bond was extended to include another building.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 26, 27; Dec. Dig. ☞12.]

Error from District Court, Tarrant County; R. H. Buck, Judge.

Action by the Kelsay Lumber Company against S. Rotsky and others, others intervening. There was a judgment, and plaintiff and others bring error. Affirmed in part, and in part reversed and rendered.

Harris & Young, of Ft. Worth, for plaintiff in error Fidelity & Deposit Co., of Maryland. Thompson & Barwise, of Ft. Worth, for plaintiff in error Kelsay Lumber Co. McLean, Scott, McLean & Bradley, Baskin, Dodge & Eastus, R. C. Fuller, J. W. Stitt, Joe Burney, T. A. Altman, Roy, Rowland & Young, and Bryan, Bartholmew & Stone, all of Ft. Worth, for defendants in error.

HALL, J. This suit grows out of two building contracts, made between Rotsky, as the owner of the property, one Helms, as the contractor, and Fidelity & Deposit Company of Maryland, as surety, upon the contract of Helms. For the sake of brevity, plaintiff in error Kelsay Lumber Company will hereinafter be referred to as the Lumber Company, plaintiff in error Fidelity & Deposit Company as the Surety Company, the defendant in error Rotsky as the owner, Helms as the contractor, and the other defendants in error, who sought to foreclose liens for labor and material, as interveners.

On the 6th day of March, 1912, the owner made a contract in writing with the contractor, whereby the said contractor should furnish the material and do all the labor necessary to the construction of a certain two-story brick building, to be erected upon a certain lot in Ft. Worth, Tex. The work and material were to be according to drawings and specifications made by the owner's architect Weinman. A printed form of contract was filled out by the architect and signed by the contractor as principal and by the Surety Company as surety. After the construction of this building had commenced the owner decided to erect a similar building on a lot adjoining the first, so that upon the performance of the contract he would have a building 50x97 feet, instead of one 25x97 feet, as provided for in the first contract. Accordingly, on the 15th day of April, 1912, the second contract between the same parties was entered into. The contract price

of the two buildings was $10,000. The bonds executed by the Surety Company were in the total sum of $5,000. Thereafter the construction of the two buildings was carried out as under one contract. The contracts being identical, save as to the description of the property, and the contract price, among others, contained the following provisions:

"1. The contractor shall well and sufficiently perform and finish, under the direction and to the satisfaction of L. B. Weinman, architect, acting as agent of said owner, all the work included in the plans and specifications of a two-story brick business building (including all plumbing, also to bar fixtures, all wiring and screening of first and second floors, Agee Bros. make). * * * All work and material to be agreeably to the drawings and specifications made by said architect and signed by the parties hereto (copies of which have been delivered to the contractor), and to the dimensions and to the explanations thereon, therein and herein contained, according to the true intent and meaning of said drawings and specifications, and of these presents, including all labor and materials thereto and shall provide all scaffolding, implements and cartage necessary for the due performance of said work."

"13. And it is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be sixty-two hundred and no/100 ($6,200.00) dollars, subject to the additions or deductions on account of alterations hereinbefore provided, and that such sum shall be paid in current funds by the owner to the contractor in installments as follows: Seventy-five per cent. for material and labor installed in the building, on weekly estimates issued by the architect; it being understood that the final payment shall be made within three days after this contract is completely finished; provided that in each of the said cases the architect shall certify in writing that all the work upon the performance of which the payment is to become due, has been done to his satisfaction; and provided further, that before each payment, if required, the contractor shall give the architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractor; and further that if at any time there shall be any lien or claim for which, if established, the owner of the said premises might be made liable and which would be chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify him against such lien or claim until the claim shall be effectually satisfied, discharged or canceled; and should there prove to be any such claim, after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the former's default."

"15. And the said owner hereby promises and agrees with the said contractor to employ and does hereby employ him to provide the materials to do the said work according to the terms and conditions herein contained and referred to for the price aforesaid and hereby contracts to pay the same at the time and in the manner upon the conditions above set forth."

It was further provided in the contract that in the event the contractor should refuse to supply a sufficient number of skilled workmen, materials of the quantity and quality provided for therein, such neglect or failure being certified by the architect to

the owner, then the owner should, at his option, after three days' written notice to the contractor, provide such labor and materials and deduct the costs thereof from any money due or to become due the contractor; or in the event the architect deemed the cause sufficient, the owner, upon the certificate of the architect, was at liberty to terminate the employment of the contractor and to take possession of the premises and complete the building and withhold any further payments to the contractor until the building was completed; thereupon the owner should pay to the contractor any difference between the amount required to complete the building and the contract price. In the event the owner should be unable to complete the building for the amount of the unpaid contract price, then the contractor should repay to the owner such excess.

The conditions of the bonds accompanying the contracts executed by the Surety Company are identical, and are as follows:

"Now, if the said contractor shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned, as to be performed and fulfilled by him, and if the said contractor shall repay to the said owner all sums of money which he may pay to other persons on account of work and labor done or materials furnished, which said contractor may fail to do or furnish, and shall pay to the said owner all damages he may sustain and all forfeitures to which he may be entitled by reason of the nonperformance on the part of said contractor of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void," etc.

The building was completed by the contractor on or about the 1st day of August, 1912. About the middle of June, 1912, some of the interveners filed with the owner notice of their claims, and thereafter liens were filed from time to time until September 1st following. It was discovered by the architect, about the middle of June, that the contractor would not be able to complete the contract by the use of the 75 per cent. payments made upon the weekly estimates. The estimates furnished by the architect are the same except as to the date, the amount due, the balance in the hands of the owner under the contract, and the amount previously paid.

The Lumber Company instituted suit to recover the sum of $3,167.65, and to foreclose the materialman's lien, making the owner, the contractor, and the Surety Company defendants. The owner interpleaded some of the subcontractors and laborers, and the remaining defendants in error intervened. Defendants in error Presley and Johnson, in addition to claiming a debt and lien against the premises for labor, sought to recover of the Surety Company the sum of $1,000, which they alleged they deposited with said company to induce it to become the surety upon the bond of the contractor and to indemnify it against loss as such surety. The Lumber Company alleged that the original bill of lumber upon which it figured was $950, the balance of its claim being made up of extras as itemized. It further alleged that the owner agreed and obligated himself to pay the full amount of the bill, and that he would withhold from the contractor and retain in his hands for that purpose a sufficient amount of the contract price due the contractor to fully pay and satisfy it, or at least $3,000 thereof; that this agreement was made long prior to the accrual of any of the other claims presented by the other parties to the suit; that said agreement was made with the knowledge and consent of the contractor. It was further alleged that the owner had notice of each and every item of the material furnished within less than 30 days after the indebtedness had accrued, and that the affidavit had been filed, fixing a materialman's lien as prescribed by law.

The owner pleaded generally the contracts and bonds, attaching each of them to his answer as exhibits, and by way of cross-action against the contractor and the Surety Company alleged that the building had not been completed within the time specified in the contracts, and prayed that he be given judgment against the contractor and the Surety Company for the penalties provided therein, amounting to $545. He further alleged that there were various claimants who had intervened, and others claiming amounts due for labor and material, and that he was entitled to recover, under the terms of the contract, against the contractor and the Surety Company, all such sums as might be recovered against him by said claimants. By supplemental petition he pleaded the statute of frauds against the Lumber Company's claim, denied the allegations of all parties that he had violated the terms of his contract by paying more than the 75 per cent. allowed under the provisions thereof, or in any other manner; that before the completion of the building, it became apparent that the contractor would default, and that notice of such impending default was promptly given to the Surety Company and its agents, demand being made that the building be completed by the Surety Company according to the plans and specifications; that the Surety Company directed the owner to pay out the entire 25 per cent. in completing the building, provided to be withheld by the terms of the contract, and that the same was so applied for that purpose, except the sum of $925.45, which the owner tendered into court.

The Surety Company denied its liability upon the bond for any amount, and alleged that the bonds it had executed for the contractor ran in favor of the owner alone, denying that interveners Presley and Johnson had any right to the $1,000, deposited by them, to induce it to execute the bonds for the contractor. The Surety Company specially pleaded the thirteenth paragraph of the

contract above set out, and alleged that by an agreement between the owner and the contractor, more than the amount permitted by said clause of the contract had been paid out upon weekly estimates without the knowledge or consent of the Surety Company; that said paragraph of the contract was a material one for the protection of all parties connected with the matter, and was a material inducement to the Surety Company to execute said bonds; that the breach of said contract in said particular released it from all liability on said bonds. The Surety Company further declared upon the twelfth paragraph of the contract, wherein it is provided that in case of the refusal or neglect on the part of the contractor to furnish properly skilled workmen and materials, the owner had the right after three days' written notice, to the contractor, to take possession of the premises and complete the building, and call on the contractor for the difference between the contract price and the cost of the building as completed. The Surety Company charged that the contract between the Lumber Company, the owner, and the contractor, whereby it was agreed that the owner would guarantee the payment of the lumber bill, was made without the knowledge or consent of the Surety Company, and in violation of the twelfth paragraph of the contract, and constituted a change and alteration of said contract, which increased, and tended to increase, the liability of the Surety Company on its obligations. As to the $1,000, placed in its hands by Presley and Johnson to indemnify it against loss and to induce it to make the bond for the contractor, the Surety Company alleged that said sum was so placed by the contractor himself, and that a collateral contract in writing was executed at the time said deposit was made, which governed the rights of the Surety Company and the interveners.

The interveners, Presley and Johnson, alleged that the terms of the contract having been breached by the owner in the payment of more than 75 per cent. of the amount of the estimate made by the architect, the Surety Company was thereby released from all liability, and they were therefore entitled to recover the full amount of the $1,000, which they alleged belonged to them and not to the contractor.

The case was submitted to the jury on special issues as follows:

"1. (a) Was there not an agreement between the Kelsay Lumber Company (acting through any of its agents) and L. B. Weinman to hold funds going to Helm under his contract with Rotsky, for the purpose of paying the lumber bill or any part of this bill?"

The jury answered: "Yes."

"(b) If you answer the above question, Yes, then state whether or not there was any agreement between the said Kelsay Lumber Company, acting through its agents, and said Weinman, that said payments should be made out of any particular funds, and, if so, out of what fund was the same to be paid?"

The jury answered: "Out of the contract price."

"2. Was, or not, Weinman informed, on or about May 28th, as to the amount of lumber bill then owing to Kelsay Lumber Company?"

The jury answered: "Yes."

"3. Was, or not, the letter of the Kelsay Lumber Company, dated June 7, 1912, delivered on that date to Rotsky?"

The jury answered: "Yes."

"4. At what date did Rotsky, by tenant or in person, take possession and begin to use each of the two buildings in question?"

The jury answered: "July, 1912."

"5. (a) Was more than 75 per cent. of the contract price of the buildings paid without the consent of the Fidelity & Deposit Company?"

The jury answered: "Yes."

"(b) On what date was the 25 per cent. reserve, provided for in the contract between Rotsky and Helm, first encroached upon or used?"

The jury answered: "Latter part of June, 1912."

"6. When was the work covered by the building contract dated March 6, 1912, completed?"

The jury answered: "First part of August, 1912."

"7. What was the agreement between Presley and Johnson and Mr. Hollingsworth, agent of the Fidelity & Deposit Company, at the time the thousand dollars was furnished and placed with Mr. Hollingsworth?"

The jury answered: "When Helm completed the contract, the money was to be returned to Presley and Johnson."

The court filed the following finding of fact:

"In response to the application of the plaintiff, the court finds as a fact that L. B. Weinman had the power and authority from S. Rotsky to enter into the agreement found by the jury to have been made between said Weinman and plaintiff, and that the said Weinman was such an agent of the defendant Rotsky as had the authority and the power to make such agreement and to bind the defendant Rotsky thereby."

Judgment was rendered in favor of the Lumber Company for the sum of only $1,632.-00, and in favor of the various interveners for the several amounts claimed by them for labor done and material furnished in the construction of the building. The judgment was also in favor of Presley and Johnson, against the Surety Company, for the $1,000 alleged to have been put up by them with the company and for a foreclosure of the mechanic's and materialman's liens and ordering a sale of the property. The court credited the sum of $924.45 on the judgment in favor of the respective parties, pro rata, and rendered judgment against the Surety Company for the total amount of the claims established as liens in favor of the Lumber Company, and the various interveners, after crediting the said sum of $924.45.

[1] The Surety Company contends, under its first assignment of error, that the agreement found by the jury to have been made by the owner with the Lumber Company that the owner should hold funds due the contractor to pay the lumber bill, and which was never carried out by the owner, had the effect of changing and enlarging the contract and obligation of the owner, and increased his statutory liability, thereby releasing the Surety Company. The evidence

showed that the Kelsay Lumber Company had properly fixed its materialman's lien under the statute, and at the time of the alleged agreement there was due from Rotsky to the Lumber Company $3,167.65. It further appears that on May 28th, at the time when the agreement found by the jury to have been made was entered into, Rotsky had disbursed only $3,644 of the total contract price. The general rule is that any material change in the method and time of payment under a building contract will release the surety, but we are not sure that the agreement in this instance was a material change. Its effect was to assign to the Lumber Company enough of the funds in the owner's hands to satisfy the debt, and to that extent created a preference in favor of the Lumber Company. Texas Glass & Paint Co. v. Southwestern Iron Company, 147 S. W. 620; Beilharz v. Illingsworth, 132 S. W. 106. By article 5637, Sayles' Civil Statutes, all liens are placed upon an equal footing. Plaintiffs in error's contention is therefore not without some merit. It is not necessary, however, to decide this question, since we think the Surety Company is clearly released from all liability under paragraph 13 of the contract. The jury found that more than 75 per cent. of the contract price of the building was paid in the latter part of June, without the consent of the Surety Company. A similar term of such contracts has been construed by our Supreme Court, and a violation of it held fatal to the right of the owner to hold the surety. Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 130 Am. St. Rep. 803; Ryan v. Morton, 65 Tex. 258; Clark v. Cummings, 84 Tex. 614, 19 S. W. 798; Durrell v. Farwell, 88 Tex. 107, 30 S. W. 539, 31 S. W. 185; Grant v. Alfalfa Lbr. Co., 177 S. W. 536 (decided by this court, but not yet officially reported). This was a material alteration of the contract, and the rule is that such alteration discharges the surety from all liability, even though it result in substantial benefit to him.

[2] As between the Surety Company and the owner and contractor, there is another ground why the Surety Company should be released. The parties are presumed to have contracted with reference to the provisions of the statute relating to such agreements. Article 5638, Vernon's Sayles' Civil Statutes, requires the owner to retain 10 per cent. of the contract price of the building for the payment of artisans and mechanics who may perform any labor or render any services in the erection thereof, and specially provides that in the event of a failure or refusal so to do, such mechanics and artisans may file liens upon the building and the land necessarily connected therewith to secure their claims. The record in this case discloses that Rotsky did not have as much as 10 per cent. of the contract price in his hands at the time of the completion of the building, and that the other interveners coming within the class designated in the statute have been forced to resort to their statutory remedies.

[3] The release of the Surety Company from all liability deprives it, of course, of the right to retain the $1,000 deposited with it by Johnson and Presley. The effect of the jury's finding is that the completion of the building by the contractor entitled Johnson and Presley to the return of the money. They made no agreement to pay attorney's fees. Their undertaking was simply one of indemnity to protect the Surety Company against liability on the bond, and, in the absence of an express agreement to pay attorney's fees, they cannot be bound. First National Bank of Paradise v. Wallace, 161 S. W. 957; Moore v. Moore, 52 S. W. 565; Martin-Brown Co. v. Auld, 34 S. W. 1050.

[4] The next question to be considered is the right of the Lumber Company with reference to the amount of its recovery. The jury having found specifically that there was an assignment of so much of the fund due Helm as would be necessary to pay the Lumber Company's debt, and the court, acting under article 1985, Vernon's Sayles' Civil Statutes, having found that Weinman was an agent of Rotsky, duly authorized to consent to the assignment and bind Rotsky, we see no reason why the judgment of the court should not have been rendered against Rotsky and in favor of the Lumber Company for the full amount of the claim. No explanation is made, nor are we able to find any in the record, why the Lumber Company's claim was reduced one-half. Kelsay is the only witness who testified with reference to the amount of the claim. His undisputed testimony is that his company furnished lumber and other material for the construction of the building in the sum of $3,167.65. This claim, as an entirety, was approved by Helm. All necessary steps were taken by the Lumber Company to fix its materialman's lien, and in our opinion it was entitled to a judgment for the full amount of its claim, with interest thereon. No issue was submitted to the jury as to the amount due, but there was no controversy as to this feature of the case. The finding of the trial judge in favor of the Lumber Company for $1,632, and the necessary foreclosure of its materialman's lien, necessarily implies that the verbal agreement between Kelsay and Helm amounted to an equitable assignment from Helm to the Lumber Company of a sufficient amount of the contract price which might be due Helm to satisfy the bill, and this is in accordance with the finding of the jury. A written order, dated July 10, 1912, addressed to the owner and his architect, Weinman, by Helm to pay to the Lumber Company $3,167.65, appears in the record. Since it must be presumed, however, in support of the judgment that the court found a valid parol equitable assignment, and since the only evidence showing the amount of the indebted-

ness to be paid thereby comes from Kelsay, the court could not arbitrarily render judgment for about one-half of what was shown to be due by Kelsay. If the court had rejected the testimony in its entirety, then there would have been no evidence upon which to base a judgment for any sum. Starkey et al. v. H. O. Wooten Grocery Co., 143 S. W. 693. Having accepted it as true, the judgment should have been for the full amount claimed, and is accordingly here so rendered.

The judgment of the lower court, therefore, is affirmed in so far as it is rendered in favor of Johnson and Presley and the remaining interveners, who have not appealed. As to the Surety Company and the Lumber Company, the judgment is reversed and rendered as herein indicated. Affirmed in part, and reversed and rendered in part.

On Motion for Rehearing.

[5] The Surety Company insists that we erred in holding that Johnson and Presley were entitled to recover the thousand dollars deposited with it. The last agreement, or, as it is termed by the Surety Company, "the receipt for the money," was never pleaded by the Surety Company as against Presley and Johnson, but against Helm alone. Its suit against Helm was dismissed. The record does not show that this collateral agreement was ever ratified or acquiesced in by Presley or Johnson, but, on the contrary, it is shown that Presley knew nothing of it until about the time the suit was instituted, and that Johnson could not read it. The thousand dollars was deposited with the Surety Company to indemnify it as surety upon the bond of Helm under the first contract. Without the consent of Presley and Johnson, the Surety Company entered into the second contract, and both buildings were constructed as under one contract. This is such an alteration of the indemnity contract as would release Presley and Johnson.

We believe the questions presented have been correctly disposed of, and the motions for rehearing are overruled.