WRIGHT et al. v. A. G. McADAMS LUMBER CO. et al. (No. 261–3477.)

(Commission of Appeals of Texas, Section A. Nov. 30, 1921.)

1. Principal and surety ⬯3 — Statute forbidding discharge of surety by alteration or changes of contractor plans held invalid.

The provision of Act March 31, 1915 (Laws 1915, c. 143, § 2 [Vernon's Ann. Civ. St. Supp. 1918, art. 5623a]), providing that no change or alterations of the plans, building construction, or method of payment shall affect the liability on a construction bond, is invalid.

2. Principal and surety ⬯97—Rule as to release of surety by alteration of contract stated.

Any agreement or dealings between the creditor and principal which essentially varies the terms of the contract without consent of the surety will release him, as he cannot be bound other than by the terms of his contract, and if the parties change this, which they have a right to do, he is discharged.

3. Principal and surety ⬯100(4) .— Contract permitting changing plans held the limit of alterations that could be made without discharging surety.

The provision of a contract, performance of which was secured by bond with surety, that the owner might make any alteration by adding, omitting, or deviating from the plans and specifications of the architect he should deem proper, limited alterations to the plans, and did not permit changes otherwise.

4. Principal and surety ⬯100(1)—Change of time of performance and consideration held to release surety.

Where a building contract for construction of residence, garage, and other works, when presented to the surety who signed the bond, recited a stipulated sum as the consideration, and gave the contractor until September 1, 1917, to complete the entire works, an additional agreement to begin work on the garage not later than April 30, and complete it within two weeks, and stipulating that the price for certain work should be estimated at a stated rate per square foot, and, if costing more or less, addition or reduction would be made, was a material alteration releasing the surety.

5. Principal and surety ⬯100(1)—Surety held released by alteration of contract as to materialmen as well as owner.

Where the contract which was presented to the surety who signed the bond for its performance was altered by material additions thereto before any material was furnished, the materialmen were in no better position to assert rights against the surety than was the owner, though the surety might not have been released had the contract been taken for the benefit of materialmen by the owner and acted upon by them before alteration.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the A. G. McAdams Lumber Company and others against L. B. Wright and others. Judgment for plaintiffs was reformed and affirmed ·by the Court of Civil Appeals (218 S. W. 571), and defendants bring error. Reversed and rendered in part, and in part affirmed.

Bean & Klett, of Lubbock, for plaintiffs in error.

Percy Spencer, Roscoe Wilson, M. Fulton, J. E. Vickers, and W. F. Schenck, all of Lubbock, for defendants in error.

SPENCER, J. This suit was instituted by defendants in error to recover of plaintiffs in error, L. B. Wright and H. K. Porter, as sureties, upon a contractor's bond for materials furnished the contractors. Recovery was also asked against R. D. Benson, owner, and L. R. Hensley and G. L. Phillips, contractors.

In his pleadings, Benson asked judgment over against the sureties for any such sum as might be recovered against him, for reasonable attorneys fees and for $445 liquidated damages for delay.

The terms of the building agreement between the contractors and the owner provided in substance that in consideration of the sum of $8,750, the contractors were to furnish material and labor for and to erect and complete by September 1, 1917, a 1½-story frame residence, a 2-story frame garage, and other work, in accordance with the plans, specifications, and drawings of the architects.

Plaintiffs in error deny liability upon the ground that the contract actually entered into was different from the one presented to them in connection with the execution of the bond in this, the contract representing the final views of the party contained the follow-

---

ing letter, which was absent from the contract at the time they executed the bond:

"April 28, 1917.

"I further agree to begin work on the garage not later than Monday, April 30th, and to push same forward to completion or to have same so as it can be used as a place of residence in two weeks from above date. Also to construct the stable as promptly as possible. In connection with the shingles for garage, if it becomes necessary to size these shingles to dimension, you are to pay for the cost of sizing same, and the loss, if any, caused by such work.

"Yours very truly,                L. R. Hensley.
"G. L. Phillips.

"It is hereby agreed and understood that the price for all tile work was estimated at $0.50 per sq. ft. Should this tile cost more or less than $0.50 per sq. ft. addition to or reduction from the contract price will be so made.
"G. L."

The jury found that this letter was made a part of the contract between the owner and contractor without the knowledge or consent of the sureties after the bond was signed by them, and that they refused, after having learned of the letter, to have anything to do with the contract.

The trial court rendered judgment against plaintiffs in error and G. L. Phillips in favor of the various materialmen for the respective amounts found to be due by the jury, and also rendered judgment in favor of the owner against the sureties and contractor for $30 delay, which amount was credited upon the amount which the owner admitted he owed under the contract. A. M. Hensley having previously been adjudged a bankrupt, judgment was rendered that the parties take nothing. as against him.

[1] Upon appeal, the honorable Court of Civil Appeals for the Seventh Judicial District concluded that, as the stipulations contained in the letter of April 28 were within the terms of the act of the Legislature of March 31, 1915, chapter 143, section 2 (Vernon's Ann. Civ. St. Supp. 1918, art. 5623a) which provides "that no change or alteration in the plans, building, construction or method of payment shall in any way avoid or affect the liability on said bond," there was no new or different contract within the purview of the statute, and that therefore the sureties were not released. That court also held the sureties liable to the owner for $200 attorney's fee and $455 damage for delay. The judgment was reformed and affirmed in conformity with this holding. 218 S. W. 571.

This section of the Commission in making its recommendations to the Supreme Court in the case of Williams v. Baldwin concluded that the provision of the statute heretofore referred to was unconstitutional as an interference with the right of freedom to contract. The judgment recommended was adopted by the Supreme Court. 228 S. W. 554. As that case turned upon the constitutionality of that provision of the act, the adoption of the judgment recommended by the commission is indicative that the Supreme Court approved the holding of the Commission that the provision referred to is unconstitutional.

If the letter of April 28 embodies terms variant from those contained in the contract presented to the sureties in connection with the execution of the bond, so as to make of it a new contract, such change or alteration cannot be justified in virtue of the unconstitutional provision of the statute, but the rights and liabilities of the parties are to be tested by the terms of the contract independent of the statute.

Plaintiffs in error assailed the constitutionality of the statute requiring the owner to take a bond, and in oral argument before us urged that the bond became void and of no effect when the statute was subsequently declared unconstitutional. It is unnecessary in view of the position we take to decide that question. The bond is not such an agreement as is prohibited by law, and it is by no means certain that it was taken in deference to the statute requiring the owner to take a bond from the contractor. It is not in the statutory amount and does not incorporate therein some of the material provisions of the statute. We will assume therefore, for the purposes of the disposition of the case, but without deciding the point, that it is a voluntary, as distinguished from an involuntary, or statutory bond.

[2] The liability of the sureties in this case is to be tested by the familiar rules governing suretyship contracts. The general rule with reference to the release of sureties is thus stated in 21 R. C. L. p. 1004, par. 53:

"It is fundamental that any agreement or dealings between the creditor and the principal in an obligation or debt, which essentially varies the terms of the contract, without the consent of the surety, will release the surety from liability. The contract of the surety being voluntary, usually without the expectation of profit or gain, the law regards his liability as strictissimi juris, and demands that he be dealt with in the utmost fairness and good faith. He cannot, therefore, either at law or in equity, be bound further or otherwise than he is by the very terms of his contract, and if the parties to the original contract think proper to change the terms of it without his consent (which, it is not disputed, they have a right to do), he is discharged. When his contract is changed without his knowledge or authority, it becomes a new contract and is invalid, because it is deficient in the essential element of consent."

[3] Neither the contract nor bond contains a provision authorizing the changing of the contract without the consent of the sureties, except that the original contract provides that the owner might make any alteration by adding, omitting, or deviating from the plans, drawing, and specifications of the architects he should deem proper and the architects

should advise. Clearly the exception limits the alteration to the plans, drawing, and specifications by the architects, and has no reference to changes otherwise. The issue is thus narrowed to a construction of the terms contained in the letter of April 28 to determine whether there was a change in or substitution of the original contract.

[4] A fair construction of the terms contained in that letter leads us to conclude that the original contract was changed in several material features. Under the original agreement the contractors had until September 1, 1917, in which to complete the entire building scheme. While under the new agreement, the garage was to be completed within two weeks from April 3. This changed the original undertaking of the contractors. By it the optional manner of proceeding in constructing the entire building program was altered. What the probable effects it may have had on the contract in its entirety we have no means of knowing, but suffice to say that before its insertion, the contractors had until September 1, 1917, to complete the entire work, and this left them free to complete the garage at any time before this date; while under the new stipulation a more onerous duty was imposed.

In another important feature does it vary the original undertaking, and that is as to the consideration. The agreed consideration of the original contract is in the certain and fixed amount of $8,750. The effect of the stipulation—to add to or substract from the contract price according as the cost of tile per square foot might demand—is to change the fixed and certain maximum liability to an uncertain and indefinite liability. The sureties were not parties to these changes, and did not consent thereto or acquiesce therein, and hence are not liable under the new contract nor responsible under the original because it ceased upon the substitution of the new contract to exist. Clark and Herring v. Cummings, 84 Tex. 610, 19 S. W. 798.

[5] The substitution of the new contract took place before any material was furnished by any materialmen, and they are therefore in no better position to assert rights against the sureties than is the owner who acted as their agent in taking the bond.

Defendants in error rely upon the holding of the Commission in Williams v. Baldwin, supra, as authority for their contention that, though the sureties may, as between themselves and the owner be discharged, as between themselves and the materialmen for whose benefit the bond was taken, they are not released. Obviously that holding is not authority for holding the sureties liable in this case. In that case there was a contract to which the sureties fully assented. The terms of its provisions were violated by the owner after the contract had been taken for the benefit of materialmen and acted upon by them, while in this case the contract presented to the sureties in connection with the execution of the bond never became a contract between the parties who were to execute it.

We recommend, therefore, that the judgments of the Court of Civil Appeals and district court in favor of defendants in error against plaintiff in error be reversed, and that judgment be rendered, discharging plaintiffs in error from all liability upon the bond, and that otherwise the judgments of those courts be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes