## HATCH et al. v. FIRST STATE BANK OF BRACKETTVILLE. (No. 7307.)

(Court of Civil Appeals of Texas. San Antonio. March 11, 1925. Rehearing Denied April 8, 1925.)

1. **Principal and surety ☞167—Security received by creditor inures to benefit of surety.**

When creditor received security for debt for which a surety is bound, security inures to benefit of surety, whether obtained at time of or subsequent to surety's assumption of liability, or with or without his knowledge.

2. **Principal and surety ☞114, 115(1)—Manipulation of security without consent of surety releases surety to extent of injury.**

When creditor, or principal with consent of creditor, substitutes or misapplies security without consent of surety, latter is released to extent that he is injured, but if no injury results therefrom, surety's liability is not affected.

3. **Principal and surety ☞159—Burden held on creditor to show that manipulation of securities without consent of surety did not affect value of security or injure surety.**

Where principal on note secured by chattel mortgage manipulated such mortgaged property with consent of creditor but without consent of surety, but there was no showing what effect manipulation of security had on value thereof or the value of original or substituted security, *held* that burden rested on surety to show substantial alteration of security when it shifted to creditor to show that value of security was not impaired by such manipulation, and that surety had not been injured.

Appeal from District Court, Val Verde County; Joseph Jones, Judge.

Action by the First State Bank of Brackettville against R. L. Hatch, J. D. Sheppard, and others. Judgment for plaintiff, and the named defendants appeal. Reversed and remanded.

Walter F. Jones, of Del Rio, T. A. Williams, of Rock Springs, and James Cornell, of Sonora, for appellants.

Thurmond & Belcher, of Del Rio, for appellee.

SMITH, J. F. R. and A. Benton, as principals, executed their joint note payable to the First State Bank of Brackettville; and R. L. Hatch and J. D. Sheppard executed the note as sureties. Subsequently F. R. Ben-

ton executed and delivered to the bank a mortgage upon 700 head of sheep to secure the payment of the note, and later the Bentons, with the consent of the bank, exchanged some of the sheep covered by the mortgage for goats whereby the security was reduced, or at least changed, from 700 sheep to 300 sheep and 200 goats. The mortgage, however, remained in force as originally executed. The original note was renewed by the principals and surety Sheppard prior to this substitution or relinquishment of securities, but was not executed by surety Hatch until afterward. The evidence conflicted as to whether Hatch knew of and consented to the substitution before he executed the renewal note.

When the parties defaulted in the payment of the renewal note, the bank brought suit thereon against all the principals and sureties, and prayed for foreclosure of the mortgage lien. Before the case was tried, however, the bank filed a trial amendment, alleging that the mortgaged property had been sold and the proceeds of the sale credited on the note, withdrawing its prayer for foreclosure, and seeking to recover the amount of the note less the credit thereon. Neither party alleged the value either of the original or of the substituted securities, nor was there any proof thereof. In response to a directed verdict the court rendered judgment for the bank against the principals and sureties, jointly, for the amount of the note, less the credit, with judgment over in favor of the sureties against the principals. The sureties, Hatch and Sheppard, have appealed, contending that because the principals on the note, with the consent of the creditor bank, substituted the security the sureties were thereby released from their obligation.

[1] It is well settled in this and other jurisdictions that when a creditor receives security for a debt for which a surety is bound, the security inures to the benefit of the surety, whether it is obtained at the time of or subsequent to the surety's assumption of liability, or with or without the surety's knowledge. Brandt, Sur. and Guar. §§ 480, 482; 21 R. C. L. p. 1053, § 98; 32 Cyc. p. 221.

[2] It is equally well settled that when the creditor, or principal obligor with the consent of the creditor, relinquishes, substitutes, or misapplies the security without the consent of the surety, the latter is thereby released from his obligation to the extent he is injured; that is to say, he is released in an amount equal to the decrease in the value of the security by reason of its manipulation. If the manipulation of the security does not have the effect of changing the contract of suretyship and does not injure the surety, however, his liability is not affected thereby, and he will be bound as originally contemplated. Brandt, Sur. and Guar. §§ 480, 486; 32 Cyc. p. 221; 21 R. C. L. pp.

---

1004, 10053; 5 Elliott, Cont. § 3975; Murrell v. Scott, 51 Tex. 520; Clark v. Cummings, 84 Tex. 610, 19 S. W. 798; Machine Works v. Templeton, 82 Tex. 443, 18 S. W. 601; Wright v. Lbr. Co. (Tex. Com. App.) 234 S. W. 878; Burns v. Staacke (Tex. Civ. App.) 53 S. W. 354; Albright v. Allday (Tex. Civ. App.) 37 S. W. 646.

It is conceded that the security originally obtained by the bank consisted of a mortgage upon 700 sheep, that with the consent of the bank but without the consent of at least one of the sureties the principal obligor exchanged some of the sheep for goats, leaving only 300 sheep and 200 goats, which the creditor and mortgagor finally sold, crediting upon the note the proceeds from the sale. In other words, it is conceded that at least a substantial part of the original security was relinquished or in part relinquished and in part substituted with other security, so that instead of consisting of 700 sheep it consisted of 300 sheep and 200 goats, and all of it finally sold. There is no showing, however, as to what effect this manipulation of the security had upon the value thereof. Neither the value of the original nor of the substituted security is shown; nor is it shown that the amount received from the final sale of the security represented the actual or market value of the security; nor that it equalled the value of the original security.

[3] In this state of the record it appears, and appellee concedes, that the controlling question in the case is, Did the burden rest upon the creditor, or upon the surety, to show whether or not this admitted manipulation of the security resulted in injury to the surety? It having been shown that the herd of 700 sheep was converted, constructively by the creditor, into a herd of 300 sheep and 200 goats, upon whom rested the burden of showing that the substantially reduced and changed herd was greater, equal to or less than the value of the original and larger herd? No authorities are cited by either party upon this point, but we have concluded that the burden rested upon the sureties in this case to show a substantial alteration in the contract upon which their liability as such was based, but when they met that burden (and in this case they showed an apparently substantial diminution of the security), the burden then shifted to the creditor to show that the value of the security was not in fact impaired, and that the sureties had not been injured. It has been expressly so held. Brandt, Sur. and Guar. § 480.

We think this is a reasonable rule. It might not be difficult for a surety to show loss or substitution of securities; these facts would ordinarily and naturally develop in the course of the litigation. But the true facts as to the relative values of the old and the new security must rest peculiarly within the knowledge of the creditor who has negotiated them, or consented thereto, and who is necessarily in a better position than the unadvised surety to show that the latter has not been injured, or, if injured, the extent thereof. In this case, for instance, the creditor, consenting to the exchange of presumably 400 sheep for 200 goats, must have first ascertained the relative values of the exchanged stock; whereas, the sureties, although equally interested, knew nothing of the exchange until after it was made, and so far as the record shows had no means of obtaining the information. So, we hold that the surety is put to proof of the manipulation and substitution of the security and the creditor's share in causing it; and the other circumstances, which if they existed leave him without a claim, are put upon the creditor to prove. 5 Wigmore on Ev. § 2486. Giving direct application of the rule to this case, when appellee bank admitted that it had substituted some of the securities, relinquished others and finally sold them all, without the consent of the sureties, it became its duty to go a step further and show that appellants, as sureties, were not injured as a result of the transaction. It did not do this, the extent of its right to recover was not established, and it was therefore not entitled to recover.

The facts in the case do not appear to have been fully developed, and, as the judgment must be reversed, the cause will be remanded for another trial.

Reversed and remanded.