ROTSKY v. KELSAY LUMBER CO. et al.
(No. 135–3033.)

(Commission of Appeals of Texas, Section B. March 2, 1921.)

1. Mechanics' liens ⟨⟩115(1)—Statute as to reservation of purchase price not applicable to materialmen.

Rev. St. art. 5638, declaring that whenever a mechanic or artisan performs any service for any contractor or subcontractor the owner shall reserve 10 per cent. of the contract price to secure payment of such mechanic, and in event of failure the mechanic may file a lien, has no application to a materialman asserting an equitable assignment of a portion of the contract price.

2. Appeal and error ⟨⟩1173(2)—As to parties not appealing, judgment will stand undisturbed.

In an action where there. were numerous parties, the judgment of the Court of Civil Appeals will be affirmed with respect to those parties not questioning it by writ of error.

3. Assignments ⟨⟩85—Priority of equitable assignments.

Where equitable assignments are shown to have attached to funds of a contractor in the owner's hands at a time when no notice of lien claimants had been brought home to him, such equitable assignments attach to the funds, and impound them for the benefit of the assignees in the order of the priority of date.

4. Mechanics' liens ⟨⟩195—Priorities of mechanic lien creditors.

Where several lien creditors showed notice of claim to the owner of a building being constructed at a time when he held funds in excess of existing lawful demands against him subject to enforcement in point of priority, then whether their notices were filed in point of time or not, if fixation is completed within the statutory period, they should be paid in full, but should the funds be less than the aggregate of such claims payment should be made pro rata.

5. Mechanics' liens ⟨⟩195—Subsequently filed liens take priority only as to funds thereafter accruing.

Where the owner, after deducting the amount of claims for liens already filed, paid further amounts to the contractor, succeeding claims should be treated as claims in the first instance, except that they attach only to any balance left in the owner's hands either from previous assignments or liens, but when the entire contract price is exhausted the owner cannot be held for further payments.

6. Mechanics' liens ⟨⟩115(1)—Owner liable who pays out moneys subject to assignment or lien claims.

Should an owner of a building after notice of a claim pay out to the contractor funds lawfully impounded, he becomes personally liable to assignees, and his property becomes bound to answer to liens fixed by diligent claimants.

7. Mechanics' liens ⟨⟩113(2) — Impounding dates from time of notice.

In case of liens against the property of an owner of a building in construction, the impounding of funds due the contractor dates from the service of statutory notice presuming that fixation is completed as required by statute.

8. Assignments ⟨⟩85—Impounding dates from notice of equitable assignment.

Where funds due contractor are equitably assigned, impounding dates from the date of the assignment.

9. Mechanics' liens ⟨⟩195—Priority among earliest claimants.

Where lien claims and equitable assignments arise out of construction of a building, diligent claimants are entitled to priority over others, and claimants, who by their delay have allowed the owner to pay out funds they might otherwise have impounded, cannot thereafter demand that they share with diligent claimants.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the Kelsay Lumber Company against S. Rotsky and others, others intervening. On appeal by plaintiff and others, the judgment was affirmed in part and in part reversed and rendered by the Court of Civil Appeals (178 S. W. 837), and defendant Rotsky brings error. Judgments of Court of Civil Appeals and District Court affirmed in part and in part reversed and remanded.

Baskin, Dodge & Eastus and McLean, Scott & McLean, all of Fort Worth, for plaintiff in error.

Thompson & Barwise, of Fort Worth, for defendant in error.

Harris & Young, of Fort Worth, for defendant in error Fidelity & Deposit Co. of Maryland.

J. W. Stitt, of Fort Worth, for defendant in error Pressley & Johnson.

SADLER, P. J. This action was initiated by the defendant in error Kelsay Lumber

Company to recover from S. Rotsky, as owner, and the Fidelity & Deposit Company of Maryland, as surety, an account of $3,167.65 for material furnished by it under purchase by W. H. Helm, as contractor under the owner for the erection of two buildings on lots owned by Rotsky in Fort Worth, Tex. The deposit company was sued as surety upon the bonds given by Helm to Rotsky in assurance of performance of his contract. Helm is not sued by any of the parties; there being proper allegations showing that he was dead and his estate insolvent.

Plaintiff based its demand against Rotsky upon an equitable assignment to it by Helm of sufficient of the contract price to cover its account, charged to have been given verbally May 28, 1912, also on Rotsky's personal promise to answer for Helm's obligation, and in virtue of a materialman's lien fixed upon the property of Rotsky. Plaintiff undertook to hold the deposit company by reason of its bonds of assurance for performance of the building contracts by Helm.

Rotsky also by cross-action sought to hold the bond company for penalties for failure of contractor to complete buildings within time specified in the contracts, and also for any amounts which he might have to pay, not only by reason of plaintiff's suit, but upon other claims which he impleaded for adjudication.

The deposit company claimed that it had been released because of a violation of the contracts by Rotsky in paying to the contractor, without its consent, more than 75 per cent. of the contract price of the buildings, and also by reason of his failure to reserve 10 per cent. of the contract price, as required by statute. It further denied such privy of the interveners to the contracts between Rotsky and Helm as entitled them to protection under the bond, except as such protection may have accrued through Rotsky by reason of his obligation to such interveners arising under the contracts.

C. J. Miller, A. G. Screen Company, S. E. Starns, C. J. Browning, J. H. Meade, C. Johnson, and W. Pressly answered, setting up various claims for labor and material furnished Helm, and asserting materialmen's and laborers' liens by virtue of compliance with the statutes. Johnson and Pressly also intervened for recovery from the deposit company of $1,000, which they had placed with it as an assurance that Helm would complete the buildings, and to be returned to them when the buildings were completed. For a more detailed statement of the case, reference is made to the opinion of the Court of Civil Appeals, 178 S. W. 837.

Rotsky alone applied for writ of error, the granting of which brings before the Supreme Court the consideration of the questions urged in the application.

As these errors assigned to the judgment of the Court of Civil Appeals authorize the consideration of the questions hereinafter discussed, we will pretermit a statement of them and the order of their presentation.

The questions to be considered in arriving at a disposition of this case are: (1) Is Rotsky liable to the lumber company for the debt of Helm: (a) By reason of a verbal equitable assignment; (b) by virtue of the primary promise of Rotsky to answer for Helm's debt; or (c) because a materialman's lien had been fixed on Rotsky's property at a time when he was called upon to reserve from the contract price the amount of the debt of the lumber company? (2) Did Rotsky pay out more than in contemplation of his contract with Helm, so as to effect a release of the bonding company? (3) Did Rotsky's failure to retain 10 per cent. of the contract price effect a release of the bonding company under the statutes? (4) Did any of the interveners have materialmen's or laborers' liens properly fixed upon the property? (5) If so, what were the rights of these lienors as among themselves and as against Rotsky? (6) Were Johnson and Pressly entitled to have the bonding company return the $1,000 placed with it as indemnity? The answers to these issues as established by the evidence seem to be determinative of the whole case.

[1] There is no evidence that Rotsky paid to the contractor in excess of 75 per cent. of the material and labor bills, and the surety company should not be released upon its contention that he paid in violation of the contract, nor does release arise by reason of the statute asserted. The plain provisions of the contracts and bonds authorized Rotsky to pay, and such was his duty, 75 per cent. of the material and labor bills upon estimates of the architect. The evidence does not show that he breached this provision of the contracts. The statute (Rev. St. art. 5638) pleaded has relation to a different class of claims from those asserted in this case. There is no evidence to sustain the contention of the lumber company that it had an equitable assignment of sufficient of the funds to cover its debt prior to July 10, 1912, nor does it show notice or fixation of a lien prior to that date. It does not base any ground of recovery upon an assignment of $500 made May 28, 1912. Personal liability of Rotsky does not arise upon the pleading and proof from any promise to answer for the debt of Helm, nor is it shown, with sufficient certainty to base a conclusion, that Rotsky has done any act rendering him personally liable for the debt of the plaintiff.

It is clear from plaintiff's pleading and evidence that reliance as to an equitable assignment is wholly upon an assertion of such assignment as comprehending the entire debt, accrued and to accrue, from Helm to it, for material supplied, at least to the extent of $3,000. It does not show itself entitled to a recovery upon any of the theories pleaded as the basis for its action. Whether it be entitled to recover upon the theory of an equita-

ble assignment, or upon the fixation of a materialman's lien, must be referred to July 10, 1912. Rotsky is not shown at this date to have held in his hands any funds to which either could, or did, attach; nor is he shown to have made any payments previously in breach of the rights of the lumber company under the contracts and its ultimate rights. Whether the money on hand on July 10, 1912, remaining due upon the contracts, was chargeable in Rotsky's hands with plaintiff's right, either as equitable assignee or as a lienor, is not disclosed by the record. The interveners have neither pleaded nor proved with sufficient definiteness facts which support the fixation of materialmen's or laborers' liens and their attachment to the funds in Rotsky's hands. The whole record is so confused that no reliable conclusion can be predicated thereon. In this case it is not only necessary to show by clear proof the facts requisite to fixation of the liens, but to further show that they attached, under the existing conditions at the time of notice to the owner, to funds then in his hands, and to so present the facts as to determine the relative rights of the lienors in the funds. The record does not so show.

[2] The judgment of the Court of Civil Appeals not having been called in review as to the disposition made of the contest between Johnson and Pressly, on the one hand, and the deposit company, on the other, in the particular of the $1,000 deposit made at the time of the issuance of the bond under the first building contract, that judgment should stand as rendered in the trial and affirmed in the appellate courts.

[3] It is an impossibility under the pleading and evidence to ascertain the corresponding rights in point of priority among the several interveners, with reference to funds which may have been in the hands of Rotsky at the time of the notice of claims. For the guidance of the trial court, we think that it is proper to suggest our view of the method by which the priorities of the claimants against the funds should be settled among such as established valid liens against Rotsky. In passing, however, it is proper to say that if any equitable assignments are shown to have attached to funds in Rotsky's hands, at a time when no notice of lien claimants had been brought home to him, such equitable assignments attached to the funds, and impound them for the benefit of the assignees in the order of the priority of date. Hess & Skinner Eng. Co. et al. v. Turney (Sup.) 216 S. W. 621.

[4] As to lien creditors, if A., B., and C. show the notice of claim to the owner at a date when he holds certain funds in excess of existing lawful demands against him, subject to enforcement in point of priority, then whether their notices were equal in point of time or not, if fixation is completed within the statutory period, they should be paid in full. However, should the money held by the owner under these conditions be less than the aggregate of such claims, payment should be made in the proportion which each claim bears to the aggregate of all claims in this class.

[5] If after the notice of such claims as fall within the preceding class, the owner should pay out of the balance on hand, remaining after deducting the amount of claims in the preceding classes, any further amounts to the contractor under the obligations of his contract, then such succeeding claim, or claims, as may be brought to his notice shall be treated as in the first instance, except that they shall attach only to such balance as then is in his hands free from previous assignments or lien claims. This method should be continued until the funds are exhausted. Of course, when the contract price is thus exhausted, the owner cannot be held for any further payments, and such claimants as lose their opportunity to share in the funds gain no advantage against the owner or his property in virtue of their liens, since there is nothing to which the liens can attach.

[6] Should the owner after notice of a claim, or claims, not respect same, and pay out funds lawfully impounded, he thus becomes personally liable to an assignee, and also his property becomes bounden to answer to liens fixed by diligent claimants.

[7, 8] The impounding thus dates, as to equitable assignments, from the date of the assignment; and as to liens, from the date of the statutory notice, presuming always that fixation is completed as required by statute. Wilson v. Sherwin-Williams Co. (Sup.) 217 S. W. 372.

The order here suggested is, in our opinion, sound, and finds support in Nichols v. Dixon, 99 Tex. 263, 89 S. W. 765. It is true that Judge Williams specifically states that this question is not before the court, and no opinion is expressed upon it, yet the general course of reasoning in the opinion accords with the view here expressed.

It certainly would be unjust to the diligent claimant, and without purview of his equitable rights, to penalize him because of the refusal of the owner to make immediate payment of his claim. The duty of the owner is to reserve the impounded funds to satisfy existing charges.

When the diligent claimant obtains the right, the owner then becomes the principal obligor to him to the extent of the fund impounded, subject alone to the equality given to the like diligent claimants falling in a particular class. The statute does not penalize the owner for a delay in payment to the diligent claimant, since it specially provides that he shall not be bound beyond his contract.

[9] Equity certainly will not penalize the diligent claimant because of the delay in payment by the owner, or because of the laches

of a subsequent claimant whose delay has afforded the owner an occasion to deplete the funds by lawful payments made subsequent to and in recognition of the rights acquired by the diligent creditor. First Nat. Bank v. Lyon-Gray Lumber Co. (Sup.) 217 S. W. 133, and authorities cited supra, supply the rules by which the rights of the parties in cases of this character should be determined.

The judgments of the Court of Civil Appeals and of the district court, as between the deposit company and Johnson and Pressly, should remain undisturbed; in all other respects the judgments of these courts should be reversed, and the cause remanded to the district court for trial in accordance with this opinion.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

---

⊙➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
228 S.W.—36