### FIDELITY & DEPOSIT CO. OF MARYLAND et al. v. KELSAY LUMBER CO.

### No. 1178—5503.

Commission of Appeals of Texas, Section B.

June 25, 1930.

Civil Appeals, and to the Supreme Court, is indicated by the opinion of the Amarillo Court of Civil Appeals, reported in 178 S. W. 837; the opinion by the Commission of Appeals, wherein its holding was expressly approved by the Supreme Court, reported in 228 S. W. 558; the opinion of this section of the Commission of Appeals, in answer to certified questions, reported in 12 S.W.(2d) 973, and the opinion of the Court of Civil Appeals at Fort Worth, reported in 19 S.W.(2d) 618, from which several opinions may be gathered a complete history of the case. The record is so voluminous that it is not practicable to give in this opinion more than a general outline of the questions involved.

There are two applications for writs of error, one by the plaintiff in error, S. Rotsky, one of the original defendants in the trial court, and the other by the Fidelity & Deposit Company of Maryland, another original defendant, wherein the defendant in error, Kelsay Lumber Company, a corporation, was the original plaintiff and has continued to be the only plaintiff in the case.

Briefly, the defendant in error, Kelsay Lumber Company, filed this suit against the two plaintiffs in error and W. M. Helm, besides some other defendants, who were dismissed from the case at the last trial of the case in the district court. The purpose of the suit was to recover from the plaintiffs in error and Helm a certain lumber and material bill, amounting to the sum of $3,167.65. The original petition, as well as the first and second amended petitions, alleged that the Kelsay Lumber Company had furnished to Helm, as a building contractor, the lumber and building material mentioned in the petition, which was used in the construction of a certain building for the plaintiff in error, Rotsky, of the value stated in the petition, which building Helm had contracted to construct for Rotsky, in which Helm was to furnish and pay for all labor and material necessary to construct the building, according to certain plans and specifications, and for which Helm had not paid; that the lumber company had an agreement with the owner, Rotsky, and the contractor, Helm, whereby the lumber company would not be paid for its material on weekly estimates, as provided in the contract, made between Rotsky and Helm, but that the owner, Rotsky, was to hold back, out of the contract price, for the building a sum of money due the contractor sufficient to pay the material bill, which bill was to be paid directly to the lumber company by the owner. The petition also alleged that the plaintiff in error, Fidelity & Deposit Company of Maryland, had become surety for the contractor in two bonds, aggregating $5,000, conditioned for the faithful performance of the obligations of the contractor, set forth in the contract made with Rotsky.

William F. Young, McLean, Scott & Sayers, and Baskin, Eastus & Greines, all of Fort Worth, for plaintiffs in error.

Thompson & Barwise and H. B. Smith, all of Fort Worth, for defendant in error.

SHORT, P. J.

The record of this lawsuit dates from the filing of the original petition on July 2, 1912. Its progress, through three trials in the district court and corresponding appeals from judgments rendered there to the Courts of

The plaintiff in error, Rotsky, denied liability in his answer and filed a cross-action against the surety company, based on the conditions in the bonds. Likewise the surety company denied liability to Rotsky as well as to the lumber company on various grounds, some of which will be discussed. The case was tried on special issue, and the jury answered the following six questions in the affirmative:

"Question one: Was there an agreement between R. E. Kelsay and W. M. Helm in substance that the lumber bill of Kelsay Lumber Company should be paid by Rotsky through the withholding by him of money going to Helm under the contract, and the lumber bill to be paid directly by Rotsky to the Kelsay Lumber Company out of money thus withheld?

"Question two: If you answer Question One in the affirmative, then was Weinman given notice by any representative of the Lumber Company of the agreement, if there was such, inquired about in Question One?

"Question three: If you have answered Question Two in the affirmative, then did there become due to Helm after the giving of such notice, money earned under the contract in an amount more than the lumber bill of the Kelsay Lumber Company?

"Question four: Did Weinman have authority from Rotsky to receive notice of the agreement, if any, stated in Question One, and to determine for Rotsky whether funds coming to Helm under the contract would be so withheld.

"Question five: Did the architect Weinman agree with the Kelsay Lumber Company, or any of its representatives that he, Weinman, would hold back enough money out of the contract price to pay the lumber bill of the Kelsay Lumber Company?

"Question six: If you have answered Question Five in the negative, you need not answer this question, but if you have answered same in the affirmative, then you will answer: Did the defendant Rotsky at any time authorize the architect Weinman to agree with Kelsay Lumber Co. that enough money out of the contract price would be withheld to pay the lumber bill of the Kelsay Lumber Company?"

It answered the following question, which was the seventh, in the negative.

"Question seven: Did the defendant Rotsky agree with Kelsay Lumber Company, or any of its representatives, to hold back out of the contract price a sufficient amount of money to pay the lumber bill of Kelsay Lumber Co.?"

Based upon the answers to these questions, judgment was rendered that Kelsay Lumber Company recover from S. Rotsky the sum of $5,938.46, together with interest thereon from the 29th day of July, 1927, at the rate of 6 per cent. per annum until paid, with all costs of the suit, with the exception of the cost of the first appeal, and writ of error to the Supreme Court; and after reciting certain provisions of the two bonds, executed by the Fidelity & Deposit Company as surety for the contractor, Helm, judgment was rendered against the surety company in favor of Rotsky for the same amount of the judgment which had been rendered against Rotsky in favor of the lumber company. This judgment also disposed of the rights of certain interveners, which part of the judgment has become final and is therefore not before us. Before the last trial Helm had died and his estate being insolvent, as to him the suit was abated.

The court, in its decree, denied foreclosure sought to be fixed, established, and foreclosed by the defendant in error, upon the land upon which the building is located, and also denied any recovery by the lumber company against the surety company. To this judgment, so rendered, all the parties, that is to say, the lumber company, the surety company, and Rotsky, excepted and gave notice of appeal to the Court of Civil Appeals. However, the lumber company did not perfect its appeal, while the other parties did.

The case having reached the Court of Civil Appeals at Fort Worth, and while pending there the following questions were certified to the Supreme Court by the Court of Civil Appeals:

" '1. Were the plaintiff's pleadings, upon which the last trial was had, sufficient to show a right of recovery upon the theory of an equitable assignment, noted above?

" '2. If the foregoing questions be answered in the affirmative, then in view of the allegation in the supplemental petition, copied above, was plaintiff's claim limited to the difference between the amount thereof and the sum of $950.00 by reason of the allegation to the effect that "Rotsky himself undertook as an independent obligation upon his part to pay the said lumber bill sued for by plaintiff herein, or at least but $950.00 thereof?

" '3. Was plaintiff's claim limited to 25 per cent. of the builder's contract price by reason of the further allegation in the petition made in the alternative that "defendant Rotsky obligated and bound himself to always hold at least the sum of 25 per cent. of the entire amount of his said contract with said Helm for the use and benefit of the plaintiff herein for its lumber bill, and further agreed not only to hold the same but to pay it over to the said plaintiff for the said lumber bill"?

" '4. If there was an equitable assignment in plaintiff's favor, such as pleaded, was the defendant Rotsky entitled to a credit on the amount of such bill for the $925 deposited by him with the clerk of the court; or was the loss of those funds his loss rather than the loss of plaintiff?

" '5. If we would hold that defendant Rotsky was entitled to recover over against

the defendant surety company, would the latter 'defendant be entitled to a credit against that demand of the amount of such deposit?' "

The Supreme Court, speaking through Judge Speer, member of section B of this Commission, answered question No. 1 in the affirmative, questions No. 2 and 3 and 5 in the negative, and, in answer to question No. 4, answered that the loss of the funds mentioned in that question fell upon Rotsky.

The Court of Civil Appeals, having received the information it sought from the Supreme Court, then rendered a judgment, upon rehearing, affirming the judgment of the trial court, in favor of the lumber company against Rotsky, and, by reducing the recovery against the surety company in favor of Rotsky in the sum of $1,687.25, rendered a judgment in favor of Rotsky against the surety company for the sum of $4,251.20, with interest thereon at the rate of 6 per cent. per annum from July 29, 1927, the date of judgment of the trial court.

From these judgments writs of error have been prosecuted to the Supreme Court by Rotsky, and also by the surety company. A further elucidation of the contentions of the several parties not disclosed by this statement and by the several opinions of the courts heretofore mentioned will be made by us in discussing the assignments of the two plaintiffs in error.

In the application for the writ of error, made by the plaintiff in error Rotsky, occurs this statement: "The sole question presented here is whether the defendant in error's second amended original petition on which the trial was had, was sufficient to state a cause of action, that is to say, whether the allegations of said petition were sufficient to allege an equitable assignment."

As its sole ground of jurisdiction the application states that the Court of Civil Appeals, in its opinion rendered in this case, has held differently, from the prior holding of the Supreme Court in this case, quoting a part of the language used by the Supreme Court in rendering its opinion. 228 S. W. 558.

The application then presents the following assignment of error: "The Court of Civil Appeals erred in its judgment rendered wherein a holding that the defendant in error's second amended petition, on which the trial was had, was sufficient to allege, and state a cause of action." The application then presents this proposition.

"The defendant in error's cause of action, as pleaded in its first amended original petition on which the former trial of this cause was had and its cause of action pleaded in its said second amended original petition on which the trial herein was had, being in all material respects the same, and defendant in error's said first amended original petition having failed, to allege a cause of action in that it failed to allege facts sufficient to constitute an equitable assignment, the defendant in error's said second amended original petition is likewise insufficient to allege or state a cause of action herein."

The contention is made by Rotsky that the opinion of the Court of Civil Appeals conflicts with that of the Supreme Court, in that it is asserted the Supreme Court held the defendant in error did not establish an equitable assignment from Helm to the defendant in error, while the Court of Appeals held that it did. We have reached the conclusion from a careful examination of the two opinions that no real conflict exists. The state of the record, at the time the opinion of the Commission of Appeals was rendered, as bearing upon the testimony relating to an equitable assignment, was materially different from the state of the record on that subject when the opinion of the Court of Civil Appeals was written, and this difference in the state of the record clearly accounts for the apparent conflict on this subject in the two opinions.

The only assignment of error to be found in Rotsky's application for the writ of error is quoted above. That assignment alleges the insufficiency of the defendant in error's second amended petition to state a cause of action, while the proposition submitted under that assignment, also quoted above, asserts that the petition was insufficient "to allege a cause of action, in that, it failed to allege facts sufficient to constitute an equitable assignment," claiming, however, that the Supreme Court had held the first amended petition not sufficient, and that the second amended petition was substantially the same as the first.

The Commission of Appeals, in its opinion, did not pass upon the sufficiency of the plaintiff in error's petition to allege facts sufficient to constitute an equitable assignment, but does say that the facts proven by the record, as it existed then, did not show the defendant in error entitled to a recovery upon the theory of an equitable assignment of the funds due by Rotsky to Helm under the written contract between these parties, saying on this subject, "whether it (Kelsay Lumber Company) be entitled to recover upon the theory of an equitable assignment * * * must be referred to July 10, 1912. Rotsky is not shown at this date to have held in his hands any funds to which either could or did attach; nor is he shown to have made any payments previously, in breach of the rights of the lumber company, under the contract and its ultimate rights. Whether the money on hand on July 10, 1912, remaining due upon the contract, was chargeable in Rotsky's hands with plaintiff's rights, either as an equitable assignee or as a lienor, is not disclosed by the record." The findings of fact by the jury, quoted above, conclusively demonstrates that this apparent defect in the rec-

ord, as it existed when the Commission of Appeals wrote its opinion, did not exist when the Court of Civil Appeals rendered its opinion.

Assuming the contention made by Rotsky that the second amended original petition is substantially the same as the first, and referring to the excerpt taken from the second amended original petition in the opinion rendered by this section of the commission, we find the exact question presented by the assignment and the proposition finally determined against the contention made by Rotsky. After quoting from the petition we said in the opinion last mentioned: "But the petition further sets forth as a fact that Helm agreed with it [Kelsay Lumber Company] that Rotsky should withhold sufficient funds to pay the company's accounts and authorize it [Kelsay Lumber Company] to collect the same directly from Rotsky, and that Rotsky after notice of such agreement assented thereto and promised compliance. This we think is abundantly sufficient to show an equitable assignment of such funds." Rotsky v. Kelsay Lumber Company, 12 S.W.(2d) 973, 976; Johnson v. Amarillo Improvement Co., 88 Tex. 505, 31 S. W. 503; Davis & Goggin v. State National Bank (Tex. Civ. App.) 156 S. W. 321; 2 Ruling Case Law, Para. 21, p. 614. This assignment of error cannot be sustained, and we therefore overrule it.

The first assignment of the plaintiff in error, Fidelity & Deposit Company, assigned as error the action of the Court of Civil Appeals in overruling its motion for a rehearing, saying: "Because the findings of fact made and returned by the jury, show an agreement between the owner, the lumber company, and the contractor, whereby material changes were made in the terms and provisions in the building contract, signed by plaintiff in error as surety for the said contractor, Helm was made without the knowledge or consent of this plaintiff in error." Under this assignment of error the surety company submits this proposition:

"The jury having found an agreement was made between the defendant in error, the materialman, Rotsky the owner and Helm the contractor, whereby it was agreed the owner would hold back a sufficient sum of the contract price and pay the same direct to the materialman for his material on completion of the building, without the agreement of the surety on the building contract and bond, when the said contract provided that the contract price should be paid to the contractor in weekly installments on certificates of the architect, based on 75 per cent of the value of the material and labor installed in the building each week, the surety in said contract was released from liability."

██ If there were material changes made in the terms and provisions of the building contract, under the facts found by the jury,

without the knowledge or consent of the surety, whether these changes resulted to the benefit or harm of the surety, the latter was released from the obligations imposed upon him by the terms of its bond. So the important question of fact to be determined from an inspection of the record is whether such material changes were made. This building contract, in the form of two instruments, being in writing, it became the duty of the trial court to construe them, and, while these instruments were lengthy, we only find it necessary to incorporate in this opinion therefrom the following:

"The contractor shall and will well and sufficiently perform and finish, under the direction and to the satisfaction of L. B. Weinman, Architect, (acting as Agent of said Owner), all the work included in the plans and specifications of a two story brick business building (including all plumbing also to box fixtures, all wiring and screening of 1st and 2nd floor, Agee Bro's make). The old building now on lot to be the property of Contractor. The building to be erected on lot 25 x 97 feet, being northeast corner of Twelfth and Calhoun Streets, in the City of Fort Worth, Texas. All work and material to be agreeably to the drawings and specifications made by said Architect, and signed by the parties hereto (copies of which have been delivered to the Contractor) and to the dimensions and explanations thereon, therein and herein contained, according to the true intent and meaning of said drawings and specifications, and of these presents, including all labor and materials incident thereto, and shall provide all scaffolding, implements and cartage necessary for the due performance of the said work.

"Should the Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained such refusal, neglect or failure being certified by the Architect, the Owner shall be at liberty after three days' written notice to the Contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the Contractor under this contract; and if the Architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the Owner shall also be at liberty to terminate the employment of the Contractor for said work and to enter upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the Contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time if the

unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the Owner in finishing the work, such excess shall be paid by the Owner to the Contractor, but if such expense shall exceed such unpaid balance the Contractor shall pay the difference to the Owner. The expense incurred by the Owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the Architect, whose certificate thereof shall be conclusive upon the parties.

"And it is hereby mutually agreed between the parties hereto that the sum to be paid by the Owner to the Contractor for said work and materials shall be sixty two hundred and no/100 ($6200.00) dollars, subject to the additions or deductions on account of alterations hereinbefore provided, and that such sum shall be paid in current funds by the Owner to the Contractor in installments, as follows:

"Seventy-five per cent for material and labor installed in the building, on weekly estimates, issued by the Architect.

"It being understood that the final payment shall be within three days after this contract is completely finished; provided that in each of the said cases the Architect shall certify in writing that all the work upon the performance of which the payment is to become due has been done to their satisfaction; and provided further, that before each payment, if required, the Contractor shall give the Architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said Contractor; and further, that if at any time there shall be any lien or claim for which, if established, the Owner of the said premises might be made liable, and which would be chargeable to the said Contractor, the Owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify him against such liens or claim, until the claim shall be effectually satisfied, discharged or cancelled. And should there prove to be any such claim after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the former's. default."

The material portions of the two bonds, which were in their material parts the same, attached to and guaranteed the performance of said contracts, are as follows:

"Know all men by these presents:

"That W. M. Helm, contractor, more fully set forth in annexed contract in this bond styled as principal, and as securities, are held and firmly bound unto Sam Rotsky, Owner, a resident of the City, County and State aforesaid, in the sum of thirty one hundred and no/100 (3100.00) dollars, lawful money of the United States of America, well and truly to be paid to the said Sam Rotsky, Owner for which payment, well and truly to be made, we bind ourselves and each of us by himself, our and each of our heirs, executors and administrators, firmly by these presents, sealed with our seals and signed with our hands, this 6th day of March in the year of our Lord nineteen hundred and twelve.

"The condition of the above obligation is such, that, whereas, the said W. M. Helm, Contractor and Sam Rotsky, Owner, have on the day of the date of these presents, executed and entered into a certain contract for the performance of certain work, and furnishing of certain materials in said contract described, which said contract is hereto annexed.

"Now if the said Contractor shall well and truly perform and fulfill all and every, the covenants, conditions, stipulations and agreements in said contract mentioned as to be performed and fulfilled by him, and if the said Contractor shall repay to the said Owner all sums of money which he may pay to other persons on account of work and labor done, or materials furnished, which said Contractor may fail to do or furnish, and shall pay to the said Owner all damages he may sustain, and all forfeitures to which he may be entitled by reason of the non-performance or malperformance on the part of the said Contractor of. any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void, otherwise the same shall remain in full force and virtue."

There is no question made of the fact that these contracts were silent as to the terms on which the materials for the construction of the buildings were to be purchased, or when or how the same were to be paid for. The contracts duly provided, expressly, that whatever payments Rotsky was to make were to be made directly to the contractor. The only restriction placed upon the contractor by the terms of the contracts was that the contractor should not receive any money from the owner until the architect, named in the contract, had issued his weekly estimates of the materials and labor installed in the building, and when this had been done, the contractor was entitled to receive 75 per cent. of the amount shown by each weekly estimate, which had been installed in the building, at the time the weekly estimate was issued. It must be assumed, in the absence of the submission of any issue on this subject, and in the absence of any request therefor, that the trial judge, in rendering the judgment which was rendered, found, as a fact, that each and every provision of the written contract had been substantially complied with, both by the contractor and by the owner, up to the time that the contractor defaulted and the

building began to be completed by the owner's agent, at the request of the surety company. The undisputed fact is further shown by the record that, at the time the contractor defaulted and the enterprise was taken over by the surety company and finished by the owner's agent at the request of the surety company, Rotsky, the owner, had retained in his hands more than 25 per cent. of the contract price the owner was to pay for the completion of the building, clearly indicating that the contractor had not received from the owner any excess of 75 per cent. of the aggregate weekly estimates issued by the architect, and therefore there was left in the owner's hands as much money as the surety company had a right to expect would be left in his hands at any period during the progress of the enterprise. The surety company was not entitled to be informed, under the terms of the contract, as to the terms on which the materials for the construction of the building were to be purchased, or when or how the same were to be paid for.

Under a similar situation, where the pertinent facts were such as to make the principle of law, involved in this case, applicable to the facts in this case, were applied in the case of Hess & Skinner Engineering Company v. Turney, 110 Tex. 148, 216 S. W. 621, 622, when the Supreme Court of this state, speaking through Associate Justice Greenwood, said:

"There never was any change in the contract guaranteed by this surety company. Such contract was silent as to the terms on which the material for the construction of the bridge was to be purchased. The bond in effect authorized the contractor to make his own terms, and we see no good reason why it should be held that this did not include authority, while acting in good faith, to change such terms."

He then quotes with approval from an opinion by the Supreme Court of the United States in Guaranty Co. v. Pressed Brick Company, 191 U. S. 425, 24 S. Ct. 142, 48 L. Ed. 242, the following:

"The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with the knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time."

Judge Greenwood further says:

"The surety company was liable, on the bond, for the payment of the debts to the local merchants and laborers, being essentially claims for labor in the prosecution of the work of performing the engineering company's contract. Hence it sustained no injury by the bridge company's consent to the application of $6,499.80 to satisfy such claims."

In the case of Southern Surety Company v. Klein, 278 S. W. 527, 529, in which a writ of error was refused, the Court of Civil Appeals at Amarillo, speaking through Judge Randolph, upon a statement of facts, similar to those we have under discussion, said:

"But we do not concede that there was any change in the contract between the city and Ware, in any event. There was a change in the time of payment, between Ware and Klein."

After quoting with approval the language, in part, we have heretofore quoted from the opinion in the case of Hess & Skinner Engineering Co. v. Turney, supra, Judge Randolph proceeds as follows:

"In this case the contract between the city and Ware was silent as to the terms on which the material was to be purchased. It was also silent as to the parties from whom the material was to be obtained. It being contemplated that Ware must have material and labor with which to perform his contract * * * between the city and Ware being silent upon how and where and the terms upon which he was to get such material, Ware had the legal right to go into the market and purchase same upon his own terms. Consequently, he having made the collateral contract agreement with Klein for the material * * * he and Klein had the authority to change the time of payment for such material, and such change was not a change of any term of the city's contract."

What has been said by the Supreme Court and by the Court of Civil Appeals, in the cases from which we have quoted, is applicable to the situation presented by the record in this case. The contract between Rotsky and Helm is silent as to the terms on which the material was to be purchased. It is also silent as to the parties from whom the material was to be obtained. It was evidently contemplated at the time the contract was executed that Helm would, in order to comply with his obligations under the contract, secure material and labor, and, inasmuch as the contract did not prohibit him from doing so, Helm had the legal right to do as he did, with reference to the material delivered to him by the Kelsay Lumber Company. Moreover, when the assignment of this fund had been accomplished, the plaintiff in error acquired the same right to demand of Rotsky payment of the sums due, as Helm had previously had, it appearing from

the findings of fact by the jury that there was an amount of money earned by Helm, under the contract with Rotsky, more than sufficient to pay the account of the lumber company for building material which it had furnished to Helm.

In this case the agreement made between the contractor and the lumber company and the owner of the building, through his authorized agent, Weinman, was to the effect that the lumber company would waive, for the time, the payment of money it was entitled to have under the contract for the lumber it was to furnish in the construction of the buildings, so that the contractor might have sufficient funds out of the first money coming to him, from weekly estimates, with which to pay for labor and materials other than the lumber furnished by the plaintiff in error necessary to be installed in certain buildings, and to start the work of performing the contract with Rotsky, and that Rotsky would hold out of the money going to Helm, under the contract, sufficient to pay the lumber bill, which was but another way of extending the payment of the bill for materials essential in the prosecution of the work in the performance of Helm's contract with Rotsky, until each of the bills for labor and material, also essential in the prosecution of the work, might be paid. This agreement was not in violation of the contract made between Helm and Rotsky. Upon the contrary, it was in furtherance of its purpose, and necessarily resulted in a benefit to Rotsky, as well as to the contractor and surety company. The good faith of the parties in reaching this agreement is not questioned, and there is no assault made upon the agreement growing out of the contention that it was made to defraud any one or to impair the rights of any one. It rather appears that, had not the agreement been reached, the contractor would not have been able to have even partially complied with his obligations to Rotsky. The record shows that Helm so far complied with the obligations of his contract to Rotsky that, when he did default, Rotsky was enabled to finish the building, according to the plans and specifications, with money he had obligated himself to pay to the contractor for the completed building, and to have remaining nearly one-tenth of the original contract price. We therefore overrule this assignment.

■ The surety company, in another assignment of error, assails the judgment of the Court of Civil Appeals rendered against it, as being excessive to the extent that said judgment was rendered for accrued interest on the principal of the debt of the lumber company.

Since we have concluded that the lumber company is entitled to a judgment against Rotsky, and have reached the further conclusion that there was no change made by Helm in his dealings with the lumber company, of the contract he had made with Rotsky, and that therefore the surety company has not been absolved from the obligation imposed upon it by its bond, one of the conditions of which was that it guaranteed that Helm should pay to Rotsky whatever sums Rotsky may be compelled to pay to other persons on account of materials furnished, it necessarily follows that, to the extent of the amount of the bond, the surety company would be liable to Rotsky in the exact sum which Rotsky became liable to other persons for material furnished. The amount of the judgment rendered against Rotsky embraced accrued interest, not based on any issue of fact found by the jury, but results as a matter of law.

Ewing v. Foley, Inc., 115 Tex. 222, 280 S. W. 499, 44 L. R. A. 627; Ry. Co. v. Brinkman (Tex. Com. App.) 292 S. W. 861; Harris v. Cordella (Tex. Com. App.) 285 S. W. 268. This contention of the surety company cannot be sustained, and the assignment of error, relating thereto, is overruled. We have considered all of the other assignments presented in the application by the surety company, and, finding no merit in either of them, all are overruled.

We recommend that the judgment of the Court of Civil Appeals based upon the motion for rehearing, modifying the judgment of the district court, be in all things affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals on rehearing affirmed, as recommended by the Commission of Appeals.